CONSOLIDATED FRUIT-JAR COMPANY *v.* WRIGHT.

Letters-patent No. 102,913, issued to John L. Mason, May 10, 1870, for an "improvement in fruit-jars," are void: *first,* because there was a purchase, sale, and prior use of the invention more than two years prior to the application for a patent; *second,* because at the time of such application the invention had been abandoned to the public.

APPEAL from the Circuit Court of the United States for the Southern District of New York.

This is a bill in equity filed by the Consolidated Fruit-Jar Company to restrain the alleged infringement by the defendant of letters-patent No. 102,913, issued May 10, 1870, to John L. Mason, for an "improvement in fruit-jars," and of which the complainant, by mesne assignments, is the owner. The court below, upon hearing, dismissed the bill; whereupon the complainant appealed here.

The facts are set forth in the opinion of the court.

*Mr. John H. B. Latrobe* for the appellant.
*Mr. George Gifford, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is a case in equity brought by the appellants to enjoin the appellee from infringing a patent issued by the United States to John L. Mason, on the 10th of May, 1870, "for an improvement in fruit-jars," of which patent the complainant is the assignee.

The disclaimer and claim of the patent are as follows: —

" Separately considered, I do not claim a metallic flexible screwring or cap, C, for holding a cover on a preserve-jar, nor an external gasket receiving-shoulder upon preserve-jar, except when such

gasket-shoulder is at the top of a continuous glass screw; neither do I claim the combination of a screw-ring cap with a packing-ring, so applied to a jar that a portion or the whole of such packing-ring is exposed within the jar, nor when the gasket-shoulder is at the base of the glass screw, as in my patent of 1858; but—

"What I do claim as new, and desire to secure by letters-patent, is—

"The combination, first, of the shoulder, $b$, to receive a gasket outside and a little below the top of the jar; second, of the cover, B, with the rim, $d$, extending down outside of the top, to press upon the gasket, C; and, third, of the screw-ring or screw-cap, C, with its screw-threads operating upon those of the jar below the gasket-shoulder,— all substantially as above set forth and described."

The screw-cap, C, is described in the patent as made of metal.

The answer sets up several defences.   Our remarks will be confined to two of them.

1. That there had been "purchase, sale, and prior use" of the invention "more than two years prior" to the application for the patent.

2. That the invention was abandoned to the public.

These objections are founded upon the seventh section of the act of 1839.   Curtis on Pat. (4th ed.) 696.

The invention was completed in June, 1859.   The application for the patent was made on the 15th of January, 1868. The intervening period was between eight and nine years. The two years prior to the application began on the 15th of January, 1866.   It is within the limits of the tract of time first mentioned that the facts are to be sought upon which the second point is to be determined, and within the same period, less two years after the 15th of January, 1866, that those relating to the first point must have occurred, in order to avail the defendant.

There is no conflict in the testimony.

In June, 1859, Mason had a model made for his jar and cover, according to his invention.   He took the model to Reed & Co., glass-makers, in Jersey City.   They made for him at least two dozen of the jars.   When they were done, Mason received five or six of them, and a short time afterwards, the

residue.  Of the first lot, he gave one to Reed, and one to Fitzgerald, his lawyer.  The others he took home.  What became of them does not appear.  Those of the second and larger lot he certainly sold.  His recollection to this effect is distinct.  He thinks he received for them three or four dollars a dozen.  He does not know what was done with them.  The inference is a fair one, that they were used for the purpose for which they were intended.  His object in selling was twofold, — to get the money which they yielded, and to test their salability in the market.

The statutory clause upon which the second objection is founded is in the disjunctive.  The language is " purchase, sale, or prior use " . . . " for more than two years prior " to the application for the patent.  The phrase, " for more," as thus used, is loose and inaccurate, and is to be understood as if the language were earlier than " two years prior," &c., or as if " for " were omitted from the sentence.  This omission would produce the same effect.

The defects specified are also in the singular.  It follows that a single instance of sale or of use by the patentee may, under the circumstances, be fatal to the patent; and such is the construction of the clause as given by authoritative adjudications.

In *Pitts* v. *Hall*, 2 Blatchf. 235, Mr. Justice Nelson said, " The patentee may forfeit his right to the invention if he constructs it and vends it to others to use, or if he uses it publicly himself in the ordinary way of a public use of a machine at any time prior to two years before he makes his application for a patent.  That is, he is not allowed to derive any benefit from the sale or the use of his machine, without forfeiting his right, except within two years prior to the time he makes his application."  See also *American Hide & Leather Co.* v. *American Tool Co.*, 4 Fisher, 291 ; *McMillan et al.* v. *Barclay et al.*, 5 id. 189 ; *McClurg* v. *Kingsland*, 1 How. 202 ; *Agawam Company* v. *Jordan*, 7 Wall. 583.  The result must always depend upon the purpose and incidents accompanying the act or acts relied upon.

If the case stopped here, the facts we have adverted to would be fatal to the patent, upon the ground of the first

objection. But there are further facts developed in the testimony which bear upon this as well as the other point.

The model remained in the possession of Reed, one of the glass manufacturers, unnoticed and uncalled for by Mason until 1867. Not knowing where to find Mason, Reed then sold it at auction. The jar Mason had given him was sold at the same time and in the same way. This utter neglect of the model for so long a time is full of significance, and has an important bearing upon the question of abandonment.

No sufficient reason is disclosed in the record why the application for the patent was not made earlier. It was not for want of the necessary pecuniary means on the part of Mason. There is no proof of such want of means; and the contrary is shown by the fact of his getting a patent for a garbage-box in the year 1867, or about that time. Mason's impression is, that when he took the jar to Fitzgerald, in 1859, the latter said that if patented he could not use the invention, because it would infringe earlier patents which he had parted with to others. He was asked when he next saw Fitzgerald. His answer was, "I think it was a number of years, probably eight or nine years. It was about the time he drew a specification for me for a garbage-box, which I received a patent for." When pressed to state why he did not apply for the patent earlier, he answered, "Well, I don't know as I had any reason or cause for not doing so." It appears that, when the specification for the garbage-box was prepared, Fitzgerald advised that a patent should be taken out for the fruit-jar. Subsequently, when Mason had concluded to make the application, he went in quest of Fitzgerald, to get him to prepare the requisite papers, and found he was dead. He thereupon engaged the services of other counsel, and the application was made.

In the mean time, large interests had grown up in the way of the manufacture and sale of jars substantially the same with Mason's, and of others more or less like it. He was stimulated to make his application by seeing such jars in the market. He had seen them before Fitzgerald advised him finally to get a patent. Even then he failed to give any directions upon the subject. He reached his conclusion subsequently. Large amounts of money must then have been invested in the busi-

ness of making and selling such jars by various persons. It is sufficient to mention the case of Rowley, who is defending this suit in the name of Wright, the appellee.

Rowley, in 1864, was selling jars known as the *Excelsior*. In the spring of 1866 he was called upon by Imlay, who charged that the *Excelsior* infringed a patent issued to him in 1865, which was for a jar such as the appellee is called to account in this case for selling. He bought from Rowley. Rowley took a license from Imlay, and thereupon commenced making and selling jars made according to Imlay's patent. These jars were nearly identical with those described in the Mason patent. A part of those sold had only glass tops, without the metallic covering, which Mason's patent called for. The residue had such covering. Prior to the beginning of the year 1868 he had sold of the jars with glass tops from two hundred and fifty to four hundred gross, making the minimum thirty-six thousand. Before the same period, he had sold a large number of those with the metallic top, and otherwise the same in construction. Thus, before Mason applied for his patent, and as early as 1866, the public was in possession of the invention in question from sources entirely independent of Mason.

It is enough to say, without recapitulating the facts, that in our judgment the defence of abandonment to the public is also clearly made out.

He who is silent when he should speak must be silent when he would speak, if he cannot do so without a violation of law and injustice to others.

The supineness of the patentee is unexplained and inexcusable. A principle akin to the doctrine of equitable estoppel applies.

Inventors are a meritorious class. They are public benefactors. They add to the wealth and comfort of the community, and promote the progress of civilization. A patent for an invention is as much property as a patent for land. The right rests on the same foundation, and is surrounded and protected by the same sanctions. There is a like larger domain held in ownership by the public. Neither an individual nor the public can trench upon or appropriate what belongs to the other. The inventor must comply with the conditions prescribed by law.

If he fails to do this he acquires no title, and his invention or discovery, no matter what it may be, is lost to him, and is henceforward no more his than if he had never been in any wise connected with it. It is made, thereupon, as it were by accretion, irrevocably a part of the domain which belongs to the community at large. The invention here in question is within this category.                          *Decree affirmed.*