### SEVERSON v. OLSON. *
Patent Appeal No. 3107.

Court of Customs and Patent Appeals.
April 17, 1933.

Nathan, Bowman & Helferich, of New York City (Albert F. Nathan and Elmer R. Helferich, both of New York City, of counsel), for appellant.

Cheever, Cox & Moore, of Chicago, Ill. (Roy H. Olson, of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal by Severson, the junior party, from the decision of the Board of Appeals of the United States Patent Office, awarding priority of the invention involved to the appellee, Olson, the senior party.

The invention in controversy relates to rotary cutters having self-locking inserted cutting blades, the blades being retained in the cutter by their wedge construction without the use of auxiliary fastening means. The structure is defined in the two counts in issue which follow:

"1. A rotary cutting tool comprising a single piece cylindrical body member adapted to be driven from the inner end thereof and having a series of slotted openings in the periphery thereof; blades inserted in said openings and extending therefrom, said openings and blades being tapered radially and longitudinally of the tool with the openings increasing in size toward the axis and outer end of the tool whereby said blades are dovetailed therein radially and wedged therein longitudinally by engaging the work and are thereby self-locking independently of auxiliary fastening devices.

"2. A rotary cutting tool comprising a cylindrical member having a series of slotted openings extending in the periphery thereof, said openings being tapered radially of the

---
*Motion for leave to file second petition for rehearing denied June 5, 1933.

member and longitudinally, and with the openings increasing in size toward the axis of said member and toward the outer end of said openings, and blades inserted in the openings having a size and shape to conform with said openings whereby each blade is locked in its respective opening by engagement with the adjacent portions of said member independently of fastening means."

Olson filed his application on July 8, 1926, and Severson filed on March 29, 1927. The two claims constituting the counts were taken from the application of Severson. Both parties took testimony.

The Examiner of Interferences found that the junior party, Severson, had established a reduction to practice in November, 1923. This date being prior to Olson's claimed date of conception, priority was awarded to Severson.

Before the Examiner of Interferences Olson urged, first, that Severson's activities did not amount to a reduction to practice, but showed an abandoned experiment; second, that, if Severson's activities should be regarded as a reduction to practice of the involved invention, the record showed that he abandoned, suppressed, and concealed the invention, and that under the doctrine laid down in Mason v. Hepburn, 13 App. D. C. 86, he forfeited his invention to his more diligent rival Olson.

The Examiner of Interferences considered this second phase of the case, and discussed a number of the authorities, but held that the record was not sufficient to show suppression or concealment, especially in view of the fact that there was no indication that Severson was stimulated into activity by any knowledge of Olson's development of a similar cutter.

Upon appeal to the Board of Appeals, the Board found that Severson had reduced the invention to practice at least as early as April 18, 1924, but held that Severson secreted and suppressed his invention and forfeited the right to priority under the doctrine laid down in Mason v. Hepburn, supra, and said:

"Severson reduced to practice at least as early as April 18, 1924, but it is not shown that this was disclosed to anyone except the employees who assisted him in his work and to Conklin, Weddell and Wilson who were officials of the O. K. Tool Co., Inc. Under these circumstances the Courts have held that the invention was secreted and suppressed, Colman v. Hathaway (D. C.) 285 F. 602, 608; Mason v. Hepburn, 13 App. D. C. 86, C. D. 1898, page 510.

"Nothing further was done with it until about two years later during which period Olson conceived the invention, reduced it to practice and gave the invention to the public by the two sales to the Ramapo-Ajax Co. He also filed his application before Severson filed. These facts appear to us to bring the case within the decision in Howard v. Bowes, 31 App. D. C. 619, C. D. 1908, page 547. In that decision it is stated that Howard did nothing until he was spurred into activity by knowledge of what his opponent Bowes had done but such knowledge is not an essential factor in the doctrine of forfeiture where the later to make the invention has disclosed the invention to the public by putting it on the market. See Brown v. Campbell, 41 App. D. C. 499, C. D. 1914, page 170; Wright v. Lorenz, C. D. 1902, page 370; Dreckschmidt v. Schaefer and Holmes, 46 App. D. C. 295, C. D. 1918, page 120, and Boyd v. Cherry (C. C.) 50 F. 279."

The counts were suggested to Olson by the Examiner. Severson points out that, if he had not filed his application, the invention involved could not and would not have gone to Olson, since he presented no claims covering it. Severson argues, therefore, that irrespective of the merits of the doctrine of estoppel, as laid down and applied in Mason v. Hepburn, supra, Severson cannot be estopped, because of the delay in filing his application, from claiming something which Olson did not claim until after Severson got into the Patent Office. While this contention might be entitled to considerable weight, under certain circumstances, our conclusion in the case renders it unnecessary to give it any consideration here.

Severson further argues that the record clearly supports the findings of both tribunals below that he had completed his invention by April 18, 1924, and contends that the records of his activities show affirmatively that he did not suppress or conceal the invention, and that there is no suggestion that he was spurred into Patent Office activity by Olson's efforts towards making the same invention, and that, therefore, the board was wholly unjustified in awarding Olson priority by reason of the doctrine of estoppel announced in Mason v. Hepburn, supra, and elsewhere.

Olson here contends, first, that Severson's activities, as shown by the record, do not amount to proof showing reduction to practice of the invention, but that under well-settled authorities the record shows nothing more than an abandoned experiment; second,

that, if the two tribunals are right in holding that Severson did reduce to practice his invention on or prior to April 18, 1924, it must be found that he suppressed the invention and was properly denied priority by the board on the ground of estoppel.

Severson was general shop foreman in the factory of the O. K. Tool Co., Inc., located at Shelton, Conn. It was a small factory with no independent patent or experimental department, and its business consisted of manufacturing milling cutters and other tools. The record shows that Severson's activities in connection with the invention began in November, 1923. He made pencil sketches of his idea and gave them to Markovics and Raduhn employees of the O.K. Tool Co., Inc., to use in making the cutter. The cutter was made and operated by Severson, Markovics, and Raduhn. The same was shown to Mr. Wilson, one of the heads of the firm. Later Severson made sketches and disclosed his invention to Conklin, who was secretary-treasurer and part owner of the company. Severson disclosed his invention to Conklin in an attempt to interest Conklin in the same, but was told by Conklin to "forget it." Raduhn also made drawings of the invention. All this occurred before April 18, 1924, upon which date Severson went on his own personal account to see a patent attorney, Mr. Davis (not the company's attorney). Mr. Davis, having the drawings and description of the invention, authorized the firm of Townshend and Townshend of Washington, D. C., to have a Patent Office search made. The search was made, and on April 26, 1924, Severson was advised that he had a "fifty-fifty" chance of obtaining a patent.

Some of appellant's witnesses state that the year 1924 was a dull year for appellant's business. They also state that Severson's invention was frequently discussed about this time. The record shows that Conklin discouraged any further efforts on the part of Severson; that Conklin was an inventor of similar tools. Severson contends that, under the circumstances, not wishing to quit his job or incur the displeasure of Conklin, his further activities concerning this invention were hampered until Conklin, in December, left the company. (Appellant here points out that Conklin took the knowledge of the Severson invention out into the world). He was succeeded by Mr. Weddell, who was added to the company's official force as its engineer. At this time a reorganization of the company's business took place. A metallurgist, Mr. Young, was employed, and numerous changes were made in the policy of the company both as to manufacturing and sales. The record shows that between January, 1925, and April 22, 1926, frequent discussions of Severson's invention were had between Wilson, Severson, Weddell, and Young. During April, 1926, the O.K. Tool Company received an order from the Boston Gear Works for two special cutters. Severson's Exhibit 5, embodying this invention, was made in connection with this order, and on April 22, 1926, two cutters were shipped to the Boston Gear Works, and Severson's Exhibit 5 was operated. The test was performed before the cutters were shipped. In August, 1926, Weddell and Wilson, for the company, corresponded with their patent attorneys concerning the patent possibilities involved in the Severson invention. On September 25, 1926, the O.K. Tool Company was advised by such attorneys to file an application on the Severson invention. Thereafter the application was prepared, submitted, and executed, and on March 29, 1927, was filed.

Between the time of Severson's reduction to practice and the date of filing his application for a patent, Olson, or his company, had, to some extent, solicited the trade, and made two sales of the new cutters to one customer in East St. Louis, one shipped in May, 1926, and the other in February, 1927. Olson was chief engineer and vice president of the Illinois Tool Works located at Chicago, Ill. As far as the record shows, knowledge that Olson or his company had solicited the trade and had made the two sales was not brought to Severson or to his associates prior to the filing of the Severson application.

Olson urges that during the period between Severson's reduction to practice on April 26, 1924, and the later dates of his activity, he had done nothing in connection with his invention and was totally lacking in diligence, and that the same is true of all those who were connected with the O. K. Tool Company.

If Severson had not reduced his invention to practice in 1924, his activities or lack of activity during certain portions of the period pointed to by Olson would become quite important in determining whether or not Severson had used due diligence during a period beginning just prior to appellee's entering the field, and the date when Severson finally reduced his invention to practice. However, since we conclude that Severson had fully reduced his invention to practice as early as April 26, 1924, we must look to the subsequent activity or lack of activity of Severson and his company only for the purpose of

determining its bearing on the question of suppression or concealment.

After very careful consideration of the record facts we conclude that such activities of Severson and his company as are shown to have occurred during this controverted period of nearly two years negative suppression and concealment rather than support them. We think the Board was in error in applying the doctrine of Mason v. Hepburn, supra, so as to deny Severson priority of the involved invention. He was clearly the first inventor, in fact, and we think should have been so regarded in law.

This conclusion is in no sense prompted by a lack of sympathy with or a failure to appreciate the importance of the doctrine of equitable estoppel when applied in proper cases. The Supreme Court of the United States in Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 96, 24 L. Ed. 68, referred to it as "a principle akin to the doctrine of equitable estoppel," and there and elsewhere gave it controlling influence. The doctrine has been supported in proper cases by the federal District and appellate courts, in equity suits, and by the Court of Appeals of the District of Columbia and this court in interference proceedings. It has become a well-settled principle, and the wholesome influence of its application, in proper cases, is universally admitted. We have no disposition to minimize its importance, or to discourage its use under circumstances clearly justifying its application.

One who deliberately secretes and suppresses his invention for a long period of time defeats rather than promotes the beneficent purposes intended by the patent laws, and, in a priority proceeding where it appears that he attempted to give his invention to the public only when a more diligent rival has independently made the same invention and offered it to the world, he should not be regarded as the first inventor. Mason v. Hepburn, supra; Miller v. Hayman, 46 F.(2d) 188, 197, 18 C. C. P. A. 848; Kendall v. Winsor, 21 How. 322, 16 L. Ed. 165; Colman v. Hathaway (D. C.) 285 F. 602; In re Mower, 15 App. D. C. 144, 150; Matthes v. Burt, 24 App. D. C. 265. Where his invention is withheld from the public for a long period of time, it strengthens the conclusion that he has willfully and deliberately done so, if he is spurred into Patent Office activity by a rival inventor. Moreover, under these circumstances, he is in the inequitable attitude of lying in wait until the unsuspecting and diligent inventor has asked for his reward. He then breaks his prolonged silence and seeks to have denied to his rival that which he himself has long eschewed.

The Board of Appeals, relying on Howard v. Bowes, 31 App. D. C. 619, held that being spurred into activity by the knowledge of a rival's efforts along the same line was not an essential factor of the estoppel doctrine of Mason v. Hepburn, supra. In passing, we might say that Howard v. Bowes cannot be relied upon for affirmative support of this view by the Board. Lederer v. Walker, 39 App. D. C. 122, is in point on this question.

It is possible that a statement of facts might be presented where it would conclusively appear that an inventor deliberately and intentionally withheld, suppressed, and concealed his invention from the public for many years, contrary to the intent of the patent law, and thus properly subjected himself, when he did make application for a patent, to the so-called doctrine of equitable estoppel, irrespective of whether or not his later activities were prompted by the action of his rival. Whether or not the first inventor has placed himself in such an inequitable position as to justify the application of the doctrine must be determined from the particular facts of his case.

Where it appears that, after long delay, he was spurred into activity by his rival's actions, it, unquestionably, strengthens the conclusion that his delay and postponement was for a purpose other than that countenanced by the patent law. We think it proper and important to note that in the numerous pertinent authorities, with but few exceptions, the doctrine of Mason v. Hepburn, supra, has never been applied, except in cases where the slothful applicant resumed his patent activities only when spurred by knowledge of his rival's actions in connection with the same invention.

In Miller v. Hayman, supra, we said substantially what had already been said in Westinghouse Electric & Mfg. Co. v. Formica Insulation Co. (C. C. A.) 288 F. 330, and elsewhere: "We think it proper to state that, as estoppels preclude a party from showing the truth, they are not favored and should not be applied to any case where the facts do not clearly justify their application."

Whether the "spurred into activity" consideration is or is not an essential factor of every case, we are not inclined to apply the doctrine of equitable estoppel unless this fact is present or unless the circumstances as a whole are equally persuasive of the inequita-

ble position of the first inventor. In other words, we are not disposed to extend the doctrine or make more liberal application of it in interference cases than was made in Mason v. Hepburn, supra. On the contrary, we recognize the danger that might flow from its loose application, and that, unless great caution is observed, it might be gradually extended until its application resulted in far greater inequities than it was designed to cure. Only where such gross inequities clearly threaten to defeat the spirit and the purposes of the patent laws must it be given controlling effect.

In the case at bar there is no showing of such abandonment, suppression, or concealment as warrants the application of the doctrine of estoppel to prevent the first inventor from obtaining priority.

The Board was in error in reversing the decision of the Examiner of Interferences, and its decision is reversed.

Reversed.