### NYSTROM et al. v. MANCUSO.
#### Patent Appeal No. 3094.

Court of Customs and Patent Appeals.
April 17, 1933.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for appellants.

Bernard F. Garvey, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Oscar P. Nystrom and Charles H. Landwehr, residing at Holland, Mich., filed their application on December 5, 1927, for an improved cold air circulator for warm air furnaces. The nature of this improvement is sufficiently shown, for the purposes of this case, by the counts of the interference hereinafter quoted.

On December 29, 1928, Benjamin J. Mancuso, of Batavia, N. Y., filed his application in the United States Patent Office for a similar improvement. The counts of the interference originated in the Nystrom and Landwehr application, being inserted therein by amendment. These counts were suggested to Mancuso by the Primary Examiner, and were thereafter entered as an amendment by said Mancuso. Thereupon an interference was declared, which is now before us. The counts of the interference are two in number, and are as follows:

"Count 1. In a warm air furnace, the combination of a casing with intake openings for cold air at the lower part, a cold air box connection for each cold air intake opening formed of walls on three sides secured to the furnace casing and one side formed by the furnace casing, and a pipe joint connection at the top of said cold air box and a cold air pipe connected thereto.

"Count 2. In a warm air furnace, the combination of a casing, an aperture in the lower part of the casing, and a cold air box with walls at three sides and with the casing wall constituting one side thereof and adapted to deliver air to the said aperture and a cold air pipe connected thereto."

The Examiner of Interferences, after testimony had been taken by both parties, awarded priority on both counts to Mancuso. In so doing, he awarded the date of conception and reduction to practice as of October, 1926, to Mancuso. Nystrom and Landwehr relied upon their filing date of December 5, 1927, for conception and reduction to practice. The point was made before the tribunals below that the counts did not read on appellants' device which they rely upon for reduction to practice. Error was assigned on this question here, but was not pressed. The point was also made by Nystrom and Landwehr, before the Examiner of Interferences,

that Mancuso's device had been in public use for over two years before his application for patent was made, and that, therefore, he should be barred from receiving a patent thereon. The Examiner of Interferences held adversely to Nystrom and Landwehr on these issues, and also added a finding that there was no evidence in the record which would warrant a finding of the "secreting or abandonment of the invention."

Before the Board of Appeals, the same issues seem to have again been insisted upon. The Board found and held that the counts read on Mancuso's said device, that there was no case of public use made out, and that, even if such public use were shown, it would result in rendering Nystrom's and Landwehr's disclosure unpatentable, as in such case any benefit would inure, not to Nystrom and Landwehr, but to the public.

In this court the appellants concede the findings of fact made by the tribunals below, waive the question of public use, and rely upon one issue only, namely, that appellee, after reducing his invention to practice, waited, without further activity, over two years before he made any attempt to apply for a patent thereon, and that then he did so only when spurred into activity by the commercial activity of the appellants. In other words, suppression and concealment is charged.

In order that the issue may be narrowed so far as possible, it is well to first consider the question as to the activity of appellants, and its effect in spurring appellee into action.

The record does not impress us that any such effect was produced upon the mind of appellee by such activity. It appears that one Malone was employed by both Mancuso and the Holland Furnace Company, the assignee of Nystrom and Landwehr, in Batavia, in the latter part of 1928. His employment by Mancuso began September 17, 1928. While thus employed, he obtained a contract for Mancuso to erect a furnace in Batavia for one Tempio. Mancuso began the work of erecting the furnace, and put in the necessary pipes during construction. When he finally came to deliver the furnace he was told by Tempio that he (Tempio) had bought a Holland furnace and not one of Mancuso's furnaces. It then appeared that Malone had been working for both parties, and had arranged with Tempio that the furnace to be used was to be a Holland furnace. Difficulty was had between the Holland people and Mancuso as to who should complete the furnace, and finally this was done by the Holland company, after payment to Mancuso of a certain amount by the Holland people in settlement of Mancuso's mechanics' lien. Malone then disappeared from the scene, and neither party seems to have had any subsequent knowledge of him. He was not called to testify.

It is upon this circumstance appellants rely in insisting that Mancuso was spurred into activity by their commercial efforts in Batavia. In our opinion no such inference can be drawn from this circumstance. The conduct of Malone is, to say the least, questionable in this entire transaction, and neither the tribunals below, nor this court, are justified in accepting this circumstance as sufficient to defeat Mancuso's right to a patent, if he is otherwise justly entitled thereto. There is positive proof in the record that Mancuso had no knowledge of, and never saw, the furnace which was installed by the Holland company for Tempio, and had no knowledge of whether it contained the device which is now the subject-matter of this litigation.

The question, therefore, resolves itself into the simple issue, whether Mancuso must be held to be barred by concealment and suppression, because of the lapse of a period from October 7, 1926, when appellee reduced to practice, to October 8, 1928, when it is conceded Mancuso ordered a search to be made preparatory to the filing of an application for patent, and after which latter date no concealment or suppression can be charged.

The testimony discloses that Mancuso was engaged in the plumbing and furnace business, in Batavia, N. Y., in September, 1926. A hot air furnace had been ordered for his building, and was then being installed in the cellar thereof. The workman installing the same had difficulty in finding a proper place for the cold air pipe. In endeavoring to meet this difficulty, Mancuso conceived the idea of the invention in issue, and had the same installed as a part of the furnace. This invention, like many others, was the result of the necessity of overcoming unsatisfactory conditions. His invention, a boot for the cold air duct, was completely installed on October 6 or 7, 1926. There is no contention made that reduction to practice was not then made, or that the device was not successfully operated at that time.

The record shows that this furnace was successfully operated in appellee's basement during all the period between its installation and the entrance of appellants into the field. At various times during the period before ap-

pellee ordered an application for patent to be filed, the operation of the device was tested by appellee by using as fuel, from time to time, wood, coal, gas, coal again, and oil. During this period, from time to time, appellee tested the operation of the device by the use of plumbers' candles and matches.

On October 8, 1928, Mancuso prepared and sent to his attorney a sketch of his invention, asking that a patent search be made, preparatory to filing application. He installed a furnace containing his invention in the home of one Quinlan, in Pavilion, N. Y., in November, 1928, and since that time has installed many of them. Mancuso states that he made the various tests because he was doubtful about the circulation of air with different fuels.

It is seriously contended by the appellants that the lapse of over two years from the time of appellee's conception, and reduction to practice until he filed his application, should be held to constitute a suppression and concealment of the device by Mancuso, and should estop him from an award of priority. In support of this proposition, several authorities are relied upon, notably Mason v. Hepburn, 13 App. D. C. 86.

There is no statutory enactment to the effect that the mere lapse of two years from reduction to practice to application for patent shall constitute a bar to patent. Nor is there any authority, which has come to our notice, so holding. Certainly this court has never announced any such doctrine.

The burden was upon the appellants to prove suppression and concealment during the said period of two years or more. MacLaren v. Stoetzel, 38 F.(2d) 125, 17 C. C. P. A. 857; Harlan v. Bregman, et al., 39 F.(2d) 494, 17 C. C. P. A. 949.

We are of opinion this burden has not been sustained. The appellee was neither concealing nor suppressing his invention. He had a full conception of its functions, and frequently tested its capacity and possibilities. All those who worked at his establishment were aware of these facts. These circumstances should be considered. Rolfe v. Kaisling, 32 App. D. C. 582. Every case of alleged concealment and suppression should be considered upon its own facts. Wietzel v. Lacy, 39 F.(2d) 672, 17 C. C. P. A. 943.

The case of Mason v. Hepburn, supra, should always be read with the facts of that particular case in mind. In that case the inventor reduced his invention, a gun clip, to practice, and laid it away for approximately seven years, during which period he commercialized other similar articles, but not this one. Spurred into activity by another entering the field, he then made application for patent. The Court of Appeals of the District of Columbia held, in view of these facts, that the prior inventor had not established his right to a patent, because of his "deliberate" concealment and withholding of his invention from the public for an extended period.

The doctrine, however, should not be indiscriminately applied. The Court of Appeals of the District of Columbia, in an illuminating opinion by the Chief Justice in Lederer v. Walker, 39 App. D. C. 122, appreciating that the doctrine announced in that case was being misunderstood and misapplied, called particular attention to the fact that the Mason v. Hepburn Case, supra, was one of "deliberate secretion of an invention." This clear statement was made: "None of the cases cited support the doctrine that mere delay in applying for a patent, after actual reduction to practice, will necessarily subordinate the first inventor's right to one who, in the meantime, has applied for a patent for the same invention, though it may be a potent circumstance in determining whether the alleged reduction to practice had, in fact, been made. The right of the first inventor who has actually reduced to practice has always been respected where there is no doubt of actual reduction to practice, and consideration has always been given to the circumstances excusing the delay."

Attention is also directed to the later cases of Hathaway v. Field, 48 App. D. C. 369, and McGrath v. Burke, 56 App. D. C. 320, 12 F.(2d) 161, and to MacLaren v. Stoetzel, supra.

We have given the general application of the Mason v. Hepburn Case doctrine extended notice in Severson v. Olson, 64 F.(2d) 694, 20 C. C. P. A. ——, decided concurrently herewith, and further comment thereon is therefore unnecessary here.

The decision of the Board of Appeals of the United States Patent Office is affirmed.

Affirmed.