23 C.C.P.A.(Patents)

In re LONG.

Patent Appeal No. 3614.

Court of Customs and Patent Appeals.

April 27, 1936.

HATFIELD and LENROOT, Associate Judges, dissenting.

———◆———

Swan, Frye & Hardesty, of Detroit, Mich. (George Rex Frye, of Detroit, Mich., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The appellant has here appealed from the decision of the Board of Appeals of the United States Patent Office which affirmed the Primary Examiner's rejection of 17 claims, numbered 35, 37, 40, 41, 42, 44, 50, 51, 53, 54, 56, 58, 59, 61, 65, 66, and 67. One claim was allowed by the Examiner, and upon appeal others were allowed by the Board.

The invention relates to a piston, and the rejected claims all define a broad invention involving a so-called "contracting" piston, which is so constructed that, when the piston head expands by reason of heating, the skirt portion of the piston will draw inward or "contract" and thereby avoid injury to the walls of the cylinder.

Appellant's application at bar was filed November 22, 1919, and broad claims therein submitted, involving the said contracting feature of said piston, were allowed in 1920 by the Examiner. Since that time appellant's application has been in two or more interferences. The following is a typical example of the claims which stood allowed as aforesaid:

"4. A piston having that portion of the periphery carrying a wrist pin bearing separated, and means extending from said separated portion to another portion of a piston whereby when said separated portion is moved outwardly by expansion, said other portion will tend to move inwardly."

While it is conceded that the above claim and other similar ones stood allowed during the time when the applicant was involved in the interference hereinafter referred to, none of the appealed claims here before us are in the exact language of said once-allowed claims. Just when the amendments took place and what became of the originally filed once-allowed claims is not disclosed by the record before us. Typical of the rejected claims at bar are the following:

"41. A piston having a peripheral bearing portion, wrist pin supporting portions separated from said bearing portion, and means connecting said bearing portion with said supporting portions respectively for drawing one portion inwardly when the other moves outwardly by expansion."

"65. A piston having a head, pin bosses depended from the head, a slotted skirt free from engagement with the pin bosses, and means connecting said skirt to said pin bosses comprising devices cooperable to draw portions of said skirt inwardly by expansion of the head when the piston is subjected to working temperature and the piston bosses are thereby moved outwardly."

In this case it is not disputed that the claims involved here are drawn to the same broad subject-matter as were the said once-allowed claims.

The Examiner rejected all the claims involved in this appeal on the ground of estoppel, and, in addition to this ground of rejection, applied several other grounds of rejection to different claims which we need not consider here, for the reason that the Board reversed the Examiner on all grounds except the ground of estoppel arising out of interference 58,260. The Board affirmed the rejection by the Examiner upon the ground of estoppel based upon appellant's failure to present for priority contest claims broader than those which appellant lost in an interference, 58,260, declared May 9, 1929, with Gordon E. Evans and Ray E. Day.

The sole question involved here is whether or not the Board committed error in affirming the action of the Examiner in rejecting the claims on the ground that appellant, being a losing party in said interference 58,260, where narrow claims were involved, failed to present the subject-matter of the claims at bar.

The so-called estoppel rejection by the Board and the Examiner involves the principle of law that a losing party in an interference proceeding ordinarily cannot be awarded claims broader than the interference issue and thus have claims which dominate the claims awarded to the successful party. The tribunals of the Patent Office based the "estoppel" upon the fact that appellant was the loser to one Evans

in interference 58,260, between Evans, Day, and himself, and that in such interference appellant under rule 109 of the United States Patent Office did not bring forward the claims at bar or the subject-matter thereof so as to provoke an interference and try out priority of invention.

In said interference 58,260 Long's instant application was not involved, but another application filed February 13, 1928, an application of Day filed March 1, 1926, and an application of Evans filed January 30, 1926, were involved. The Long application involved in the interference contained the following recital:

"This invention is a furthering of the improvements or principles disclosed in my pending applications for Letters Patent Nos. 339,892 [the application herein] and 522,974, filed November 22, 1919 and December 21, 1921, respectively, on pistons for internal combustion motors, this invention having for its primary object the purpose of providing an improved arrangement of the skirt supporting webs of the piston for controlling and drawing in the skirt of the piston when expanding forces are given to the piston."

It is clear, we think, from the record that the invention involved in said three-party interference was an improvement upon the broad invention disclosed and claimed in the instant application. For instance, count 6 thereof, won by Evans, was as follows:

"6. A piston embodying a head, two diametrically opposite wrist pin bosses secured to said head, slipper sections disconnected from said head forming thrust faces at the sides of said piston, and two divergent struts rigidly secured to each of said slipper sections at points inwardly from the side edges and connected with the respective wrist pin bosses, said struts being slightly flexible and arranged to exert a toggle action tending to draw said slipper sections inwardly as units and without distorting their cylindrical shape when said wrist pin bosses are moved apart by expansion of said head."

It is conceded that, while the drawings in each of the applications involved in said interference 58,260 disclosed the broad subject-matter of the claims at bar, they showed a piston structure, except as to the "contraction-expansion" feature, differing greatly from the piston diclosed in the instant application.

Appellant urges here that the record affords no basis for equitable estoppel or for any kind of estoppel or bar which would prevent allowance of the claims here involved, and contends here that it was not his duty to bring said claims forward in the interference, for the reason that said claims were not patentable to the winner, Evans, or the loser, Day; that his claims to the same broad subject-matter which is here involved stood allowed in the instant application from the first Patent Office action in 1920; that all parties to the interference recognized and understood that neither Evans nor Day claimed to be the first inventor of the subject-matter of the claims at bar; that both of them in the interference treated this subject-matter as prior art or at least as the invention of some one other than themselves; that both said parties had either expressly, or by their conduct, disclaimed inventorship and waived any rights to any claim of inventorship in said broad subject-matter; and that therefore, in view of the well-settled principle that counts can only be added to an interference when they may be claimed by two or more parties thereto, and since it clearly appears from the record that the counts were patentable to neither of the other parties, he (appellant) was not required to do a vain and foolish thing and thus seek to provoke an interference which could not legally be declared. On this phase of the case appellant, in his petition for rehearing before the Board, stated: "With the broad claims in question appearing clearly unpatentable to Evans and Day on their ex parte records, Long could not properly make a motion to add those claims. If he had made such a motion, he could not properly preserve his rights otherwise than by also moving that the counts be not added because on the Evans and Day records said counts were unpatentable to them, and specifically that they were unpatentable to them in view of Butler; and for good measure he should also have moved that they were unpatentable to them over other art prior to Butler and subsequent to November 22, 1919. So Long, very properly, made no motion."

Appellant states that both Evans and Day knew of appellant's earlier filed application and his claims there of the broad invention, and had before them a notice, which he served in the interference (but which we do not find of record) when

Evans proposed certain intermediate claims (that is, claims broader than the issue but narrower than those involved here), that such claims were unpatentable to Evans and Day because of the publication of certain Butler and Challis patents. He also states that he gave notice on the record that, in event his opponents proposed counts of intermediate scope, he (Long) would contest for priority of them on his earlier filed applications. Nothing of this kind appears of record and may not be considered here. It may be said here that said intermediate counts were, by the Examiner of Interferences, held not to be allowable to Evans or Day.

In support of appellant's contention that the claims here involved were unpatentable to either Evans or Day, appellant calls attention to the fact that the record shows that Evans in his application involved in the interference disclaimed the subject-matter here involved in the following language:

"It has been suggested that the normal necessary clearance might be decreased by so constructing the piston that expansion thereof along one diameter, where an enlarged clearance was provided, would result in a decreased diameter at right angles thereto. * * *

"I have discovered that it is possible to construct a piston *in which the diameter decreasing action of the prior art pistons* may be combined with other structural features. * * *" (Italics ours.)

Appellant states that Evans, therefore, knowing all these facts, submitted no broad claims covering the subject-matter here involved. This contention is not disputed, and seems to be supported by the record.

Appellant argues that, while Day did not acknowledge prior art in his specification, he did so by his amendments and arguments presented during the prosecution of his application in advance of the declaration of interference 58,260. Claim 3 of the Day application originally read on the Butler and Challis patents, and was rejected by the Examiner upon such patents as references.

The Butler patent is dated April 7, 1925, and the application for the same was filed April 17, 1922. Challis is an English patent dated May 20, 1920, and the first disclosure was made in an application filed March 20, 1919.

After the rejection of Day's said claim 3, it was amended in respects hereinafter shown, and was resubmitted. Amended claim 3 reads as follows (italicized parts being added matter):

"3. In a piston, a head, slipper sections forming thrust faces at sides of said piston and means *including divergent struts* connecting each slipper section with different points of the piston head for supporting the slipper section and tending to draw said slipper section inwardly *as a unit and without distorting the curvature of the slipper section* in response to expansion of the piston head."

It is obvious that, before amendment, the claim read on Butler and Challis and called for the same invention as is involved in the application at bar. Other broad claims also reading upon Butler and Challis and calling for the same invention as is herein involved were also canceled by Day after they had been rejected upon Butler and Challis.

Appellant contends, and we agree with such contention, that this statement of facts warrants the conclusion that Day there acknowledged that, as to the invention here involved, Butler and Challis were properly regarded as prior art to him, and that he by such conduct conceded that he was not the first inventor of such subject-matter.

The record discloses that the above contentions as to why estoppel should not apply were made by appellant before the Patent Office tribunals, both of which refer to certain phases of them in their decisions. In the decision of the Board of Appeals we find the following:

"It is our opinion that under the circumstances presented by this record we cannot accept applicant's contended excuse along this line and that we are not at liberty under the practice to now grant to a losing party on priority broad claims based upon common structure which would dominate the claims awarded to the winning party on a contest on priority as in Interference No. 58,260. We do not overlook the fact that the filing date of the present case was quite early and *even earlier than the date of conception alleged by either Day or Evans* but it must be noted that the counts of the issue of Interference No. 58,260 were at the time of making such preliminary statements, and in fact throughout the interference, relatively quite specific and we think preliminary

statements based upon the specific structure is not conclusive of what might have been proven by Day or Long on more comprehensive claims. This uncertainty is believed to demonstrate and establish the necessity or burden on applicant to have presented broader claims in order that priority on such broad claims could have been contested as between Day or Evans and applicant. Applicant did not offer to contest broader claims under the provisions of Rule 109 in that interference by bringing any motion to include such broader claims. It is not believed that applicant is excused by the fact that Evans unsuccessfully endeavored to introduce slightly broader claims in a motion under Rule 109. Where as in this case applicant was involved in several interferences it is believed that it would lead to uncertainty and confusion in practice to say that he might be excused from the application of Rule 109 in certain interferences of the group because as a matter of opinion or speculation it was assumed that the other parties of that group could not win on the counts broader than those involved in any particular companion interference. We believe it is plain that in case of a multiplicity of interferences Rule 109 would be definitely applicable to each one independently, in order that priority might be definitely contested as to each and every party involved. [Italics ours.]

"It may be noted further that none of the parties, including of course applicant, cared to contest, as to the broader claims presented by Evans, to final determination in Interference No. 58,260. The proposed counts were denied by the Examiner of Interferences and no appeal was taken. While the particular proposed counts were denied on the ground of non-patentability over a certain patent to Butler, No. 1,532,-121, which is of later date than the present application of Long it is not apparent but that other claims might possibly have been drawn to avoid Butler and which would have been broader than the counts of Interference No. 58,260 and still readable upon all of the parties. It is however apparent that in such case Evans and Day might have declared earlier dates."

In this court the Solicitor for the Patent Office contends that, regardless of whether or not the basis for an *equitable* estoppel exists, it is the settled law that, unless appellant, under rule 109, moved to add to the interference claims to the broad

subject-matter now claimed, the same being broader than the issue of the interference, he is not now entitled to their allowance in the instant application, and relies largely upon In re Rhodes, 23 C.C.P. A.(Patents) ——, 80 F.(2d) 525. The Solicitor points out certain distinctions which exist between the instant case and the Rhodes Case, but contends that the distinctions are not material and that the holding of the Board that appellant was not entitled to the claims for the reasons by it stated is abundantly supported by the authorities.

We know of no case on all fours with the case at bar either in the facts or the principles involved. It would be needless to cite authority for the proposition that in the Patent Office there has been a gradual extension of the so-called doctrine of estoppel. In some of its phases it has been approved by the courts, and in others the application of the doctrine has been rejected. It is well-settled, however, that, if a party to an interference fails to submit subject-matter claimed in the application involved or in other applications belonging to him for a contest of priority where such subject-matter is claimed by his adversary or adversaries, he is afterwards barred from obtaining claims not so submitted or claims broader than the issue of the interference. It furthermore has been held that it is not only his duty to bring forward such subject-matter when the matter is claimed by his adversary but that it is also his duty to do so when such subject-matter is clearly disclosed by his adversary and not claimed. The latter was our holding, in approving the action of the Patent Office, in Re Rhodes, supra.

We know of no case, however, where a party losing narrow claims in an interference has been denied broad claims because he failed to present the same in an interference where the subject-matter was not patentable to any one of the other parties, and where they, in claiming an improvement over the broad invention, either disclaimed the broad invention or by their conduct clearly conceded that in any event they could not be regarded as its first inventor.

Charles W. Rivise, in his work on Interference Practice, at page 6, says:

"§ 6. Invention Must be Patentable to Both Parties. An interference will not be instituted unless the invention is patentable to both parties. Hence, an interference

will not be declared if a statutory bar such as public use, etc., exists against the grant of a patent to either party. Nor will an interference be declared if the application of one party is fatally defective. Thus, in Ex parte Reagan, 1902 C.D. 40, 98 O.G. 1038, an interference was refused because the application of one of the parties disclosed an inoperative device. Likewise, in the case of In re Crane, 1903 C.D. 332, 106 O.G. 999, an interference was not instituted because one of the applications, though purporting to be for a joint invention, was signed by only one of the inventors. Crane alleged that Dwiggins, his co-inventor, had refused to sign the application but had filed a sole application in his own name. The Commissioner pointed out that an interference would be a useless proceeding, for Crane could not secure a patent without the signature of Dwiggins."

■ The patent laws are designed to reward the first inventor, and it is only in unusual and exceptional cases that the first inventor in fact is not declared the first inventor in law. Certain bars against the first inventor in fact have been interposed in the administration of the patent laws, and are usually based upon the premise that to so regard him would be inequitable. In Consolidated Fruit Jar Co. v. Wright, 94 U.S. 92, 96, 24 L.Ed. 68, the Supreme Court, referring to such a doctrine, characterized it as "a principle akin to the doctrine of equitable estoppel." It was obvious there, as has been true in many instances in cases which have followed, that the doctrine of estoppel has, at times, been applied in instances where all the elements of *equitable* estoppel were not present. But the doctrine has been applied by the courts only when it would be inequitable for some inventor other than the first to lose his reward to his less deserving adversary.

Now it is at once apparent that that kind of situation does not prevail here. It would not be inequitable to Evans or Day to give Long something which Evans and Day could not have even if Long had never entered the Patent Office. They, by their conduct, in effect having conceded, as we think they have, that they were not the inventors of the subject-matter here involved, should not be concerned with the question as to who is the first inventor of it.

The reason for the rule relied upon by the Board that a losing contender in an interference may not have broader claims allowed him than the issue of the interference is based upon the premise that, having lost in the priority contest for the narrow invention without bringing forth the broad invention, he is presumed not to be the inventor of the broad subject-matter, and therefore should not, upon such a showing, be entitled to claims which would dominate the invention won by his adversary, since it is presumed that, if either of the parties is entitled to later claim the same in other applications, it would be the winning party. It is clear in this case that Evans or Day could not then, or later, successfully claim this disputed subject-matter, and, instead of the record disclosing what the Patent Office must necessarily hold the law presumes (that applicant is not the first inventor), this record, while not conclusive, points in the opposite direction. Whether the applicant has satisfactorily shown by the instant record that he, as against others regarded as prior art for Evans and Day, is the first inventor, may be a proper consideration elsewhere but not here.

■ We are of the opinion that the Board's reasons for applying the so-called estoppel in denying applicant's claims, under the circumstances heretofore set out, are not sound. The fact that the record before us, including the record of said interference 58,260, does not conclusively show that one of the prior art patentees may not be the first inventor, is not a sufficient justification for the application of the rule when confronted with a record that disclosed that neither Evans nor Day could be held to be the first inventor. The so-called bar or estoppel applied by the Patent Office, to have any basis in law whatever, must rest upon the fact that to otherwise hold would be visiting an injustice upon some one, and that the injustice arose from the conduct of the appellant. This record does not warrant the conclusion that appellant's conduct was tainted with bad faith or resulted in injury to an interference adversary or to any one else. Indeed, it is difficult to understand how appellant could have been expected to have done more, or other, than what he did do.

■ We think the record discloses that all parties to said interference understood that the claims were not patentable to Evans or Day. This, in effect, had already been held, and the fact, as pointed out by the Board, that "it is not apparent but that

other claims might possibly have been drawn to avoid Butler and which would have been broader than the counts of interference No. 58,260 and still readable upon all of the parties," or the further suggested fact that under some assumed, but not expressed, authority, Evans might have declared earlier dates, are not matters of such importance, when taken with other circumstances of the case, as to warrant rejection of the claims on the basis of so-called estoppel. Chapman et al. v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491.

It is too well settled to require extended citation of authority that estoppels, and bars not created by statute, when interposed against statutory rights, are not favored by the courts. They should never be applied except where the facts upon which such doctrines are based are clear and definite and never on suppositious, conjectural, or hypothetical premises. Compare Miller v. Hayman, 46 F.(2d) 188, 18 C.C.P.A.(Patents) 848, 862, and Severson v. Olson, 64 F.(2d) 694, 20 C.C.P.A. (Patents) 946, 952.

Appellant, in arguing that the rule that an applicant who was the losing party in an interference may not have broad claims which dominate the interference issue, by reason of the effect of the failure to move under rule 109, is not applicable in the instant case, cites a number of authorities as having some bearing on the question. As has been hereinbefore stated, no case cited or found is directly in point on all phases of the instant case.

In Underwood's Interference Practice, 1928, at page 352, under the heading: "§ 129. Second Interference—In Exceptional Cases Only," we find the following:

" * * * To justify a second interference, there must be some exceptional circumstances, such as were present in Sarfert v. Meyer (76 MS., Dec. 410 [21 App.D.C. 26]), where the decision in the first interference was in favor of Sarfert upon the specific issue; but it appeared from the findings of fact that Meyer was the first inventor of the broad invention common to the two cases."

From In re Klahn, 1917 C.D. 7, 241 O.G. 623, a decision of the Examiners in Chief (now the Board of Appeals), we quote the syllabus as follows:

"Where after the termination of an interference involving only narrow claims the winning party takes out a patent which does not claim the invention broadly and the losing party establishes by competent evidence that he made another species of the invention patentably different from that involved in the interference prior to the date of invention established by his opponent, Held that he is entitled to a claim broad enough to cover both forms of the invention notwithstanding the adverse decision in the interference."

We quote the following from appellant's brief:

"And in the latest case known, In re Thompson (1933) [20 Pat.Quar. 252], it was held:

" 'Applicant is not estopped to secure a claim broader than and dominating a patented claim he has refused to copy for interference purposes, although he could have made such claim, *where a certain prior art patent had been cited* in both the patent and the pending application, but applicant in the pending application has sworn back of the same, and where neither commensurate claims *nor any indication that the patentee claimed to be the first inventor of the broad subject matter* was present in the patent.' "

This decision by the Board of Appeals does not contain the exact language as above quoted, but the quotation would seem to be an accurate summary of the holding of the Board.

It follows from the foregoing that the Board erred in affirming the rejection, by the Examiner, of the claims at bar on the so-called ground of estoppel, and its decision is reversed, and the cause is remanded for such further proceedings as are in harmony with the views herein expressed and as are warranted in law.

Reversed and remanded.

HATFIELD and LENROOT, Associate Judges (dissenting).

The question of the right of the adverse parties in the interference proceeding to make appellant's broad claims here involved should have been determined in that proceeding, in accordance with the rules of the Patent Office, and former Patent Office and court decisions on the subject.

In our opinion, the decision of the Board of Appeals should be affirmed.