27 C.C.P.A.(Patents)

## BROWN v. EDELER et al.

### Patent Appeal No. 4300.

Court of Customs and Patent Appeals.
· April 8, 1940.

Norbert E. Birch, of Washington, D. C., for appellant.

Watson, Cole, Grindle & Watson, of Washington, D. C. (Francis G. Cole, of Washington, D. C., of counsel), for appellees.

Before BLAND, Acting Presiding Judge, and HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences which awarded priority of invention of the subject matter of counts 1, 2, and 3 to appellees Edeler and Richardson.

The interference arises between an application of appellant filed July 16, 1932, and an application filed by appellees on August 22, 1932.

The counts in issue read as follows:

"1. The process of forming monoglycerides and diglycerides which comprises treating a fat with an inorganic compound of an alkali metal capable of saponifying the fat, the amount of the said compound being just sufficient to saponify not more than 5% of the said fat, and agitating the partially saponified mixture with glycerin at a temperature not less than 150° C. and less than the boiling point of glycerin, thereby converting a substantial proportion of the triglyceride of the fat to monoglyceride and diglyceride.

"2. The process of manufacturing fatty esters containing unesterified hydroxyl groups which comprises mixing glycerin and a fatty ester of the type found in fats and fatty oils together with a catalyst consisting of soap of a metal of valence not greater than 2, the amount of said soap being smaller than the amount of glycerin, and maintaining the mixture at not lower than about 150° C. and at a temperature less than the boiling point of glycerin until reaction occurs between said fatty ester and glycerin.

"3. The process of manufacturing fatty esters containing unesterified hydroxyl groups which comprises mixing glycerin and a fatty ester of the type found in fats and fatty oils together with a small amount of an alkali metal salt having an alkaline reaction acting as a catalyst, the amount of the catalyst being smaller than the amount of glycerin, and maintaining the mixture at not lower than 150° C. and at a temperature less than the boiling point of glycerin until reaction occurs between said fatty ester and glycerin."

The involved invention is sufficiently described in the quoted counts.

It appears that the application of appellant has been assigned to Swift and Company, and that of appellee to The Procter & Gamble Company.

Both parties took testimony in support of the allegations of their respective preliminary statements.

The Examiner of Interferences held that the evidence established that appellant conceived and reduced to practice the invention as early as May, 1932, and that appellees conceived and reduced to practice the invention as early as November 15, 1927, which is earlier than any' date alleged by appellant in his preliminary statement for conception or reduction to practice of the invention, which holdings were implied in the general affirmance of the board.

Appellant's notice of appeal to this court contains twelve reasons of appeal. These reasons of appeal embrace four contentions of appellant, all of which were either expressly or impliedly found not well taken by the Board of Appeals. These contentions are:

1. That appellees are not joint inventors of the invention embraced in the counts.

2. That appellees are not entitled to the date awarded them for conception and reduction to practice of the invention, or to any other date prior to the date awarded appellant.

3. That appellees' claimed reduction to practice was an abandoned experiment.

4. That if appellees are entitled to any date prior to the date awarded appellant, the invention was abandoned, concealed, or suppressed by them, and that under the doctrine of Mason v. Hepburn, 13 App. D.C. 86, priority should have been awarded to appellant.

It appears from the testimony that Richardson was in charge of the chemical re-

search department of The Procter & Gamble Company, and Edeler was a research chemist in this department; that in the early part of 1927 discussion arose between Richardson and Edeler with relation to the development of a substitute for cocoa butter; that from this beginning there arose the question of improvements in the synthetic preparation of mono- and diglycerides, and out of discussions upon this subject between Richardson and Edeler the idea of the use of soap as a catalyst in the interaction of glycerol and triglycerides occurred.

Dr. Richardson upon cross-examination testified as follows:

"XQ. 214. Dr. Richardson, you testified on direct examination that you discussed the problem of fat synthesis with Mr. Edeler and that following your early discussions it was suggested that soap be used as a catalyst in the interaction of glycerol and triglycerides. Who suggested the use of soap as a catalyst? A. We were never able to reconstruct that discussion in its details. Contact was so frequent, so intimate, that all we could be sure of was that it was impossible to distinguish our respective contributions to the idea, but we were each convinced that it grew out of discussion across the table to which each contributed.

"XQ. 215. I am not speaking now of just any contribution to the general idea but the single contribution of the use of soap as a catalyst. A. I, too, am speaking of that single idea.

"XQ. 216. You don't know, then, whether that was your idea or Edeler's idea? A. The idea was not a sudden inspiration, but was an idea to which each contributed one way or another.

"XQ. 217. Could you state just what it was that each one of you contributed? A. No, we have been unable in retrospect—we were unable to disentangle that. I can illustrate—I can tell you how I think it happened, but I cannot tell you how I am sure it happened, but I can illustrate how each of us might have contributed to the single idea."

Edeler, upon the same point, testified as follows:

"XQ. 84. Dr. Edeler, you testified that the invention defined in the counts in these interferences was the joint invention of yourself and Dr. Richardson? A. Yes.

"XQ. 85. Do you remember who first thought of using soap as a catalyst? A. No. We simply discussed the matter in our conferences. We discussed, for instance, the use of emulsifiers and as the result of that the idea of soap just naturally grew up. As far as I can recall it grew up almost simultaneously with Dr. Richardson and myself.

"XQ. 86. Was it your thought, then, that the soap might be an emulsifying agent to form an interface between the glycerol and tri-glyceride? A. Yes.

"XQ. 87. Doctor, is it your belief that either you or Dr. Richardson was the first to think of the use of soap in this connection? A. I don't understand the question. (Question read by reporter.) I think jointly we did, yes.

"XQ. 88. Doctor, the concept of using soap is rather a simple concept, isn't it? A. In what respect?

"XQ. 89. Just one thing. One particular catalyst or reagent, not an accretion of many things or a mixture of many things, but just one little thing, soap. Am I to understand that somehow half of the idea came out of your mind and half of the idea came out of Dr. Richardson's mind? A. I cannot say that.

"XQ. 90. But one of you thought of it? A. As near as I can recall it, it grew up in our discussions.

"XQ. 91. As the result of your discussions? A. As the result of our discussions. I do not know who actually first used the word soap, but we were just discussing it almost daily.

"XQ. 92. But one of you was the first, of course, to think of soap and mention it to the other? A. I don't know who.

"XQ. 93. You don't know who it was? A. If anyone mentioned soap, we might have said it simultaneously, I don't know. That is, I remember we just discussed that thing.

"XQ. 94. It is possible you both said it in chorus? A. It is theoretically possible but not probable, no.

"XQ. 95. It is rather probable, you think, that one of you first said soap, but you don't remember who it was that said that; is that more nearly the fact? A. I think we both thought of it at the same time."

The testimony shows that Edeler thereafter conducted several experiments, using

soap as a catalyst for the reaction of glycerin and neutral fats; that he and Dr. Richardson discussed the subject frequently; and each testified that the involved invention resulted from their joint efforts.

Appellant contends that the discovery that soap could be used as a catalyst in the involved process constituted the entire invention. Upon this point the Examiner of Interferences in his decision stated: "Whether or not the gist of the invention is in the use of soap as a catalyst as argued by Brown is not controlling on this question, since the counts also recite other limitations, such as temperatures and proportion of catalyst, which, under the established rules for construction of counts, must likewise be deemed material. Manifestly, although the idea of soap might be the suggestion of one joint applicant, additional features could be the contribution of the other. * * *"

Upon the same point the Board of Appeals in its decision stated: " * * * As pointed out by the Examiner of Interferences, the counts in issue cannot be construed as limited to soap and hence, even if the use of soap was suggested by one party or the other, it does not follow that they were not joint inventors. Neither party claims to be a sole inventor; in fact statements are made by both that the subject matter was conceived in the course of numerous conferences looking to the development of some such process as is here involved. Under such circumstances, the presumption that the invention was joint is very strong and will not be overturned except on a clear showing, the burden being heavily upon the one seeking to establish a different state of facts."

It is appellant's contention that all of the elements of the counts, other than the use of soap as a catalyst, were old in the prior art, and that the entire invention here involved lay in the idea of utilizing soap as a catalyst.

■■ However, a part of the complete inventive concept was ·in the relationship in which the soap was to be used, and the relative proportions of soap with respect to other substances employed, all of which are embraced in the counts. We cannot therefore agree with appellant that the invention here involved consisted wholly in the idea of the use of soap as a catalyst. It is also elementary that every limitation in a count is to be deemed material.

■ It is well established that an application in due form, made by two or more persons claiming to be joint inventors, is prima facie evidence that they are such. Beidler v. Caps et al., 36 F.2d 122, 17 C. C.P.A., Patents 703; Lemp v. Randall, 33 App.D.C. 430.

■ Assuming without deciding that the question of joint invention may be raised in an interference proceeding, the burden was upon appellant to establish by a preponderance of evidence that Richardson and Edeler were not joint inventors. This,. we conclude, he has failed to do.

■ With respect to appellant's contention that appellees are not entitled to the date awarded them, November 15, 1927, for conception and reduction to practice of the invention defined in the counts, Edeler testified that he successfully carried out the process defined by the counts in April, 1927.

One William F. Schanzle testified that during the years 1927 to 1932 he was a research chemist employed by Procter & Gamble Company, and worked under the direction of Dr. Richardson; that Dr. Richardson disclosed to him the process embraced in the counts in issue, and that he,. Schanzle, successfully carried out the process on a laboratory scale in 1927.

This testimony is sufficiently corroborative of the testimony of Richardson and Edeler as to conception and reduction to practice of the invention, and we find no error in the awarding of the date of November 15, 1927, for conception and reduction to practice of the invention by Edeler and Richardson.

■ As to appellant's contention that this claimed reduction to practice was an abandoned experiment, we find nothing in the record which would warrant that conclusion.

Four witnesses testified in appellees' behalf that the process defined in the counts was used from time to time during the years 1928, 1929, and 1930 in the laboratory investigations of the Procter & Gamble Company.

The investigations were not, according to the testimony, merely a repetition of the experiments conducted by appellees, as suggested by appellant, but the process defined in the counts was carried out for the purpose of preparing monoglycerides and diglycerides for use in other investigations and experiments.

We find no basis for holding that appellees' claimed reduction to practice should be held to be an abandoned experiment.

There remains the contention of appellant that appellees have forfeited their right to a patent through laches, and that because of the long delay in applying for a patent it should be held that appellees had abandoned the invention.

It is further contended by appellant that the facts established in the case at bar require the application of the doctrine declared in the case of Mason v. Hepburn, 13 App.D.C. 86. The doctrine declared in that case is thus stated in the opinion: " * * * a subsequent inventor of a new and useful manufacture or improvement who has diligently pursued his labors to the procurement of a patent in good faith and without any knowledge of the preceding discoveries of another, shall, as against that other, who has deliberately concealed the knowledge of his invention from the public, be regarded as the real inventor and as such entitled to his reward."

We have many times had occasion to consider the last above-cited case. In the case of Nelson v. Lenning, 96 F.2d 508, 25 C.C.P.A., Patents, 1119, there was a delay by Lenning of more than four years, after reducing the invention to practice, in making application for a patent. After stating that the question was whether the Mason v. Hepburn, supra, doctrine was applicable, we said [96 F.2d 511]: "We have frequently commented on the decision in that case, and this and other courts have on a number of occasions announced that the doctrine when properly applied was a wholesome one. The doctrine is well settled and is in substance that a subsequent inventor of a new and useful manufacture who has diligently pursued his labors to the procurement of a patent in good faith and without any knowledge of the proceeding [preceding] activities of another will be regarded as the first inventor in law even though he was not the first inventor in fact where the first inventor has deliberately concealed his invention from the public for a long period of time and then claimed it only when he was spurred into activity by the knowledge of the subsequent inventor's claim for patent reward. This whole question was discussed at length in Severson v. Olson, 64 F.2d 694, 20 C.C.P.A., Patents, 946; Miller v. Hayman, 46 F.2d 188, 18 C.C.P.A., Patents, 848; and numerous other decisions of this court."

We there held that there was no concealment or suppression of the invention by Lenning, and that the mere fact of delay in filing his application did not bring the case within the Mason v. Hepburn, supra, rule.

In the case of Severson v. Olson, 64 F.2d 694, 697, 20 C.C.P.A., Patents, 946, we said:

"It is possible that a statement of facts might be presented where it would conclusively appear that an inventor deliberately and intentionally withheld, suppressed, and concealed his invention from the public for many years, contrary to the intent of the patent law, and thus properly subjected himself, when he did make application for a patent, to the so-called doctrine of equitable estoppel, irrespective of whether or not his later activities were prompted by the action of his rival. Whether or not the first inventor has placed himself in such an inequitable position as to justify the application of the doctrine must be determined from the particular facts of his case.

"Where it appears that, after long delay, he was spurred into activity by his rival's actions, it, unquestionably, strengthens the conclusion that his delay and postponement was for a purpose other than that countenanced by the patent law. We think it proper and important to note that in the numerous pertinent authorities, with but few exceptions, the doctrine of Mason v. Hepburn, supra, has never been applied, except in cases where the slothful applicant resumed his patent activities only when spurred by knowledge of his rival's actions in connection with the same invention."

■ The burden was upon appellant to establish concealment and suppression of the invention by appellees. Nystrom et al. v. Mancuso, 64 F.2d 698, 20 C.C.P.A., Patents, 934.

■ We find no evidence in the record tending to establish concealment or suppression of the invention by appellees, nor is there any evidence that Edeler and Richardson were spurred to file their application by any knowledge of appellant's activities in connection with the involved invention. Therefore, the Mason v. Hepburn, supra, doctrine has no application here.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Presiding Judge, took no part in the consideration or decision of this case.