**In re ALEXANDERSON.**

**Patent Appeal No. 3260.**

Court of Customs and Patent Appeals.

April 2, 1934.

Charles E. Tullar, of Schenectady, N. Y. (Laurence B. Dodds and Fairfax Bayard, both of Schenectady, N. Y., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed his claim in the United States Patent Office on May 11, 1923, for a patent on certain alleged improvements in systems of electrical distribution, more specifically a system supplying current from a direct current distribution system for the operation of alternating current consumption apparatus. Several claims were originally involved in the application, some of which have been allowed and others dismissed. While many of these claims were heard and disposed of by the tribunals in the Patent Office, the appellant has here appealed only claims 26 and 31, both of which were rejected by the tribunals below. These claims are as follows:

"26. An electric translating system comprising a source of direct current, an alternating current motor, a plurality of electric valves for transmitting energy therebetween, means for periodically rendering said valves alternately conductive and non-conductive, and means for varying the frequency of said conductivity controlling means, as a direct function of the speed of the motor.

"31. In an electric translating circuit for operating an alternating current motor from a source of direct current through a plurality of electric valves, the method of giving said motor direct current series motor characteristics which comprises periodically rendering said valves alternately conductive and nonconductive to supply alternating current to said motor and varying the frequency at which said valves are controlled as a direct function of the speed of said motor."

As stated by the Board of Appeals, the disclosure relates generally to a thermionic valve converter for changing direct into alternating current. As disclosed by the application and its accompanying drawings, direct current is converted into alternating current applicable to an induction alternating current motor through the intermediary of electric valves of the vacuum tube type and the conductivity of these valves is controlled by means of a commutator device. This commutator is operated by a direct shaft connected with the alternating motor. A small additional direct current motor furnishes current which energizes coils arranged around the valves, and which current alternately closes and opens these valves to the passage of current therethrough, according to the method arranged by the contacts on the commutator. As these coils about the electric valves are alternately energized and deenergized, current is caused to pass first in one direction through the transformers, and then in the other direction, thus inducing the alternating current which operates the alternating motor. The commutator being directly connected with the alternating motor and operated by it, necessarily slows and revolves less rapidly as the load carried by the alternating motor increases, and it correspondingly increases its speed, and, consequently, the alter-

nations of its current, as the load is reduced and the alternating motor operates more freely and rapidly. In this way the appellant states that he has obtained all the desirable operating characteristics of a direct current system in his alternating motor.

The Examiner relied on three references, namely; Thomas, 1,224,689, May 1, 1917; Chubb, Re. 17,693, June 3, 1930; Decision of Interference Examiner in Interference No. 60,084.

The reference decision of the Examiner of Interferences arose in interference No. 60,084, previously declared in the Patent Office, which appears to have been between the application of the appellant here involved and the application of Joseph Slepian, Serial No. 680,396, filed December 13, 1923. The Slepian application and a portion of the proceedings in said interference matter appear as a part of the record. It appears that, in that interference, but one count was involved, which is as follows:

"The combination, in a system of electrical distribution, of a source of direct current, an alternating-current motor connected to said source through a plurality of valves, and means for rendering each of said valves conducting only at times when the counter-electromotive force of the motor is substantially equal to the voltage of the direct-current source."

This interference proceeding did not go to a decision on the merits, no award of priority having been made. Both parties filed motions to dissolve. Slepian alleged, as grounds of his motion, that Alexanderson was estopped to bring the motion because of a failure to proceed under rule 109 in interference No. 56,-544; that Alexanderson's device did not support the count; and that the count was unpatentable. This motion of Slepian was overruled as to the first two grounds, and granted as to the third. Alexanderson's motion to dissolve was on the ground that Slepian could not make the count, and this motion was also allowed.

It is stated by the Examiner that claims 26 and 31 here involved should be rejected on the ground of estoppel, because of the fact that the said Slepian application in interference presented a disclosure on which the two claims here in issue were readable and that these claims should have been made in the interference proceeding under rule 109, and that they, having not been so presented, are not now patentable to the appellant. The Examiner was also of opinion that claim 26 was unpatentable over the reference Thomas.

The Board of Appeals affirmed the rejection of the Examiner. In doing so, the Board of Appeals made its rejection upon reference to Thomas and Slepian, holding that the claims of the appellant here involved read directly upon both of the disclosures in the applications referred to.

The appellant argues that Slepian is not a proper reference against his present application; that Slepian did not file his application until December 13, 1923, about seven months after appellant filed his application. Arguing upon the basis of the holding in Milburn v. Davis-Bournonville, 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651, he contends that, inasmuch as he was the first inventor, the Patent Office had no right to use, and was not justified in using, Slepian as a reference against him.

To this the Patent Office makes reply that it has been the uniform ruling of that office and the courts that where one is involved in an interference with another, in which interference the claims which he afterwards asserts are patentable, were or could have been made as upon subject-matter common to both; and where he did not do so, then such failure to do so will preclude the patentability of the same to him thereafter. In this sense, therefore, the Patent Office asserts through its solicitor, it has the right and it is its duty to use such interferences against such claims in a subsequent application; perhaps not as references strictly, but in pursuance to the law and the rules of the Patent Office.

So far as we are advised, such has been the rule of the courts which were called upon to decide this matter. This court has had the question before it on several occasions. In re Austin, 40 F. (2d) 756, 17 C. C. P. A. 1202; In re Ellis et al., 47 F. (2d) 963, 18 C. C. P. A. 1060; In re Krauch et al., 56 F. (2d) 290, 19 C. C. P. A. 1003; In re Sommer et al., 56 F. (2d) 893, 19 C. C. P. A. 1030; In re Boudin, 58 F. (2d) 448, 19 C. C. P. A. 1187.

Being of the opinion that the Patent Office did not err in the consideration of Slepian as against the patentability of said claims 26 and 31, it remains to be seen whether appellant has disclosed anything patentable over and above the Thomas and Slepian references.

The reference Thomas discloses a system for the conversion of direct electric current into alternating. This conversion is accomplished by means of a rotating cylinder upon which are suitable electrical contacts by which the direct current is fed through mercury arc rectifiers to transformers by which

inductive current is fed to three phase alternating current mains which drives an alternating current motor. The cylinder bearing the contacts is revolved by a separate motor through a direct connected shaft. There is also connected with this motor, by a similar shaft, a centrifugal governor. This governor has the function, as is said in Thomas' specification:

"* * * If the speed of the synchronous machine exceeds a predetermined value, the governor cuts out resistance from the field circuit and strengthens the field magnetism which raises the voltage of the synchronous machine, 27, and thus cuts down the supply of current through the increasing of the counter electromotive force. This operation both controls the speed of the synchronous machine, 27, and then the frequency of the circuit and automatically limits the flow of energy into the receiving system to the load requirements."

There is no difficulty, in our opinion, in reading each of the counts of the interference directly upon this Thomas reference. Some suggestion is made that the mercury arc rectifiers of Thomas are not electric valves, but it is contended by the tribunals of the Patent Office that they are such electric valves, and they seem to agree with the ordinary meaning of the term. Some argument also is made that the operation of the appellant's device is not that of Thomas, inasmuch as the appellant's device only transmits current through its valves at times when the counterelectromotive force of the motor is substantially equal to the voltage of the direct current force. However, there is no such element in the claims here involved, and, while this may be a characteristic of appellant's device, as disclosed, it is not an element which may be here considered, because not claimed. Certainly, the revolving cylinder of Thomas is sufficient for "periodically rendering said valves alternately conductive and non-conductive." The expression in claim 26 of means for "varying the frequency of said conductivity controlling means," or, as stated in claim 31, "the frequency at which said valves are controlled," as a direct function of the speed of the alternating current motor, is, in the opinion of the court, supplied by Thomas in the governor which he shows as attached to his motor 27.

While, in our opinion, there is ample anticipation shown by the reference Thomas, we are equally of opinion that Slepian also disclosed the subject-matter of these claims. The Patent Office tribunals call attention to Figure 6 of Slepian's drawings. The form known as Figure 6 of Slepian shows the conversion of direct current into alternating current by a connection through an electric valve consisting of a cathode and two anodes, and certain contacting devices which are mounted on a shaft which is directly connected with the alternating current motor. As the speed of the motor rises and falls, necessarily the operation of the contacting device is changed and the frequency of the current varied.

It is said by the appellant that Slepian shows only a system with a constant frequency. However, Slepian's specification discloses that attached to his system is a "frequency-determining alternator," saying on this point:

"* * * The switching device 9 is driven by a direct-current motor that is supplied from the direct-current generator 14. Such an organization is capable of operation at any desired frequency, even though the frequency-determining alternator 2 is omitted, the frequency of the generated alternating current being then dependent only upon the speed at which the switching means are operated, that is on the speed of the driving motor 51."

Much of the argument which the appellant has directed to the court is as to matters which are not included as elements of the claims. These claims are broad, and, inasmuch as the appellant has chosen to make them so, they must be held to be satisfied by the disclosures of the references Thomas and Slepian, and by the grounds of rejection alleged by the Board of Appeals.

The decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.