26 C.C.P.A.(Patents)

## AVERY v. CHASE.

### Patent Appeal No. 4000.

Court of Customs and Patent Appeals.
Jan. 23, 1939.

BLAND, Associate Judge, and GARRETT, Presiding Judge, dissenting.

Theodore H. Lassagne, of San Francisco, Cal. (Leonard S. Lyon, of Los Angeles, Cal., and Charles M. Thomas, of Washington, D. C., of counsel), for appellant.

George F. Scull, of New York City (Stuart Hilder, of Orange, N. J., and George M. Anderson, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of invention of the subject matter in issue to appellee.

The interference is between an application of appellant filed on October 25, 1926, Serial No. 144,034, assigned to the Marchant Calculating Machine Company, and appellee's application filed on August 17, 1927, Serial No. 213,637, assigned to the Monroe Calculating Machine Company. Appellant is, therefore, the senior party.

The invention relates to improvements in calculating machines. Eleven counts are involved; because of the sole question involved in this appeal it is deemed unnecessary to describe the invention in detail or set forth any of the counts.

The history of the instant interference is concisely stated in the decision of the Examiner of Interferences herein as follows:

"The present interference was set up as the result of a series of circumstances which will be briefly outlined. On August 13, 1928, Interference No. 57,166 was declared which involved some seven parties including an application of Chase, an application of Friden and the present Avery application. During the motion period certain motions to dissolve and to amend were filed. In a decision dated January 21, 1930, the Law Examiner granted the motion to dissolve and denied a motion to amend which had been presented by Chase, the senior party. This decision was appealed by Chase, which appeal was dismissed by the Board of Appeals on December 8, 1930.

"On October 10, 1930, Interference No. 60,503 was declared by the Primary Examiner between another application of Chase and the same application of Friden. This interference was dissolved on the motion of Friden on the ground that Chase was estopped by virtue of his failure, to bring forward his second application during proceedings in Interference No. 57,166. This decision was upheld by the Board of Appeals but when the claims were rejected on the ground of estoppel he appealed, carrying the question to the Court of Customs and Patent Appeals. In its decision, In re Chase, 71 F.2d 178, 447 O. G. 997, 1934 C.D. 489, the Court reversed the Examiner and the Board, holding that since the second interference had been set up by the Office prior to the termination of the first interference there was no estoppel against Chase. Accordingly, Interference No. 60,503 was reformed. The present interference resulted from a motion brought in Interference No. 60,503 by the Marchant Calculating Machine Company, the assignee of the Friden and Avery applications.

"When Interference No. 60,503 was reformed the party Friden moved to dissolve on the ground that Chase was estopped. This motion was denied by the Examiner of Interferences who held that the decision of the Court was binding upon the tribunals of the Patent Office even though rendered in an ex parte action. The party Avery has reargued this question of estoppel at final hearing in this interference. It was pointed out that Interference No. 60,503 was declared some nine months after appeal had been taken in Interference No. 57,166 which appeal was subsequently dismissed by the Board of Appeals. It was suggested that this fact was not called to the attention of the Court and was urged that this constitutes sufficient basis for ignoring the decision of In re Chase, supra. This is not believed to be the case. While there is nothing in the above decision which definitely indicates that the Court took into consideration the nature of the Board's action in dealing with the appeal in Interference No. 57,166, their decision was of record in the file of Interference No. 57,166, which file appears to have been considered by the Court. The showing which has been made by the party Avery is not considered sufficient to justify the Examiner of Interferences in reaching a conclusion contrary to that expressed in the decision of In re Chase, supra."

To this statement it should be added that, following the reformation of interference No. 60,503, a motion was made in that proceeding to substitute the application of appellant here involved for the application of Friden. Thereafter, as a result of said motion, the instant interference was declared between Chase, appellee here, and Avery.

Appellee filed a preliminary statement alleging conception of the invention in 1922 and its reduction to practice in 1924 and 1925, and took testimony supporting such dates. Appellant took no testimony and relies upon his filing date, October 25, 1926, for conception and constructive reduction to practice of the invention.

The Examiner of Interferences found that the proofs presented by appellee es-

tablished that he conceived and reduced the invention to practice prior to appellant's filing date, and that under our decision in the case of In re Chase, 71 F.2d 178, 21 C.C.P.A., Patents, 1183, appellee was not estopped from making the claims corresponding to the counts in issue. He therefore awarded priority of invention to appellee.

Appellant appealed from such decision to the Board of Appeals. The board affirmed the decision of the Examiner of Interferences. In its decision it stated:

"Chase took testimony. Avery chose to rely upon his filing date for constructive reduction to practice. The examiner analyzed the testimonial record presented by Chase and found that the proofs clearly established that he was in full possession of the invention in issue prior to the record dates upon which Avery relies. Although the notice of appeal includes certain items in relation to the holding by the Examiner of Interferences that the party Chase had sustained the burden of proof upon him in his testimonial record, we understand that the merits of this phase of the examiner's decision is not brought forward for contest here. It appears admitted at the top of page 12 of Avery's printed brief before us that this feature is no longer urged.

"Avery now relies upon a contention that Chase should be held estopped from receiving claims corresponding to the counts. * * *"

The board further stated in said decision that it was in agreement with the conclusion of the Examiner of Interferences that upon the question of estoppel our decision in Re Chase, supra, was controlling and therefore appellee was not estopped from making the claims constituting the counts before us.

From such decision of the board appellant took the appeal before us.

In his reasons for appeal the only issue raised is that of estoppel of appellee to make the claims constituting the counts, and that is the sole question before us.

In our decision in the case of In re Chase, supra, we expressed the opinion that the special facts involved therein made inapplicable the doctrine approved by us in the cases of In re Austin, 40 F. 2d 756, 17 C.C.P.A., Patents, 1202, In re Shimer, 69 F.2d 556, 21 C.C.P.A., Patents,

979, and other cases decided by us, and declared in certain cases decided by the Court of Appeals of the District of Columbia. In our decision we stated, 71 F.2d 179:

"Appellant in the case at bar contends that, irrespective of the propriety of applying the doctrine of estoppel in cases similar to those above cited, estoppel, in this instance, should not apply on account of the special facts involved. First it is urged that Friden did not voluntarily attempt to acquire the claims involved, but that the Primary Examiner knowing of Chase's second application and of the Friden disclosure, suggested that Friden copy the claims, which was done. After Friden had copied the claims and brought about the interference at the instigation of the Examiner, he made a motion to dissolve on the ground that Chase was estopped. Thus Friden moved to dissolve the interference which he had provoked, and which would leave the claims in his possession regardless of his actual priority. It is also pointed out by appellant that, at the time of the declaration of the two-party interference, the seven-party interference had not yet been terminated and that the issues involved in the two-party interference were not the issues involved in the seven-party interference, and that, in order for Friden and Chase to have contested priority of the issues involved in the instant case, the second interference would have been formed in any event. It is urged that, if Chase had brought forward in the seven-party interference his second application and there challenged Friden or any of the other parties who could make the counts (some of them could not), the Examiner would have done exactly what he did do anyway—declare the second interference.

"We think the doctrine of estoppel above announced would apply if the issues involved here could have been properly suggested and decided in the seven-party interference. It seems to be conceded that they could not have been decided there and that the declaration of the second interference was necessary. The declaration of the second interference was the proper procedure for the Patent Office to get the exact issues between these parties set at one side for the purpose of trial. It seems anomalous to hold that, having set them aside voluntarily while the seven-party interference was going on, Chase

would be held to be estopped from claiming that which he claimed in his second application.

\*   \*   \*   \*   \*   \*

"Appellant has argued at considerable length concerning the application generally of the doctrine of estoppel arising from a failure to proceed under rule 109. It is suggested by appellant that the case of In re Martin, 48 App.D.C. 187, which we discussed in Re Shimer, supra, was in harmony with the other cases of the Court of Appeals of the District of Columbia, and is applicable to the facts at bar. We pointed out in Re Shimer that the doctrine announced in Re Martin, supra, was not in harmony in certain respects with other decisions of the Court of Appeals of the District of Columbia.

"With reference to this contention we think it sufficient to say that we do not in the least wish to weaken the force of, nor make less applicable, in proper cases, the doctrine of estoppel as announced in the Wasserfallen [54 App.D.C. 367, 298 F. 826], Shimer, and other cases cited, because we think it is of the utmost importance that troublesome, expensive, and sometimes vexatious litigation in the Patent Office should be expedited or avoided. Under the particular facts of the case at bar, we think, however, that the doctrine does not apply, and that the decision of the Board of Appeals affirming the decision of the Examiner in rejecting the claims on the ground of estoppel should be, and it is, reversed."

Appellant in the case at bar contends that in the case last cited the record was not complete and that this court was misled in its holding that there were special facts involved which prevented the application of the doctrine of estoppel to Chase; that in fact, at the time of the declaration of interference No. 60,503 between Chase and Friden, the seven-party interference, No. 57,166, had been terminated by dissolution, and that said interference No. 60,503 was not provoked by Friden but by the action of the Primary Examiner.

We think it clearly appears from the record that interference No. 60,503 was initiated by the Primary Examiner. In view of our conclusion, we do not find it necessary to decide whether interference No. 57,166 had been terminated by dissolution at the time interference No. 60,503 was declared, but we shall assume, as appellee contends, that it had not been terminated.

Appellant insists that our decision in Re Chase, supra, is irreconcilable with our views expressed in the case of In re Shimer, supra, rendered prior to our decision in the Chase Case, and our decision in the case of In re Brashares, 74 F.2d 751, 22 C.C.P.A., Patents, 873, rendered subsequent thereto, and also that said Chase decision is contrary to the rules of law declared by the court in other cited cases, among which is the case of In re Austin, supra.

In the last cited case an application of the appellant in that case and a joint application of the appellant and one Mac-Neill were owned by a common assignee. An interference was declared between said joint application and the application of one Atwood. While said interference was pending, but long after the motion period under rule 109 of the Rules of the United States Patent Office had expired, the said common assignee moved that the interference be reformed by admitting thereto the sole application of Austin. In connection with said motion an affidavit was presented in behalf of the common assignee setting forth reasons why said motion was not made within the motion period. The Patent Office tribunals denied said motion, and in an ex parte prosecution by Austin the matter came before us. We held that, the common assignee having failed to move within the motion period to admit the Austin application, Austin and his assignee were estopped from making claims which might have been adjudicated in that interference. In our decision we stated, 40 F.2d 759:

"\* \* \* Furthermore, if a party to an interference fails to comply with the rules of the Patent Office relative to the presentation of such claims, it is thereafter estopped from presenting them as a basis for another interference between the same parties. [Citing cases.]

\*   \*   \*   \*   \*   \*

"It is true, as argued by counsel for appellant, that, at the time the common assignee moved to reform interference No. 51,235 by admitting appellant's application as to counts 1 and 2 and other claims, the question of priority had not been determined; whereas, in the cases hereinbefore referred to, the issues of priority had been decided. However, the principle announced in the cited cases is applicable

here, and, if the rules of the Patent Office are to be given any force and effect, this is a proper case for their application, otherwise, the common assignee of several applications could subject an applicant involved in an interference with one of its applications to prolonged, expensive, and vexatious litigation."

It will be noted that in this case estoppel was based wholly upon failure of appellant to act within the motion period provided by rule 109. The interference had not been terminated when it was sought to add the Austin application to the interference, so that estoppel under the doctrine of res adjudicata was not involved. However, it does appear that, if said motion had been seasonably made, the issues could have been determined in the original interference, while in the case at bar it is conceded that the issues here involved could not have been determined in the original seven-party interference, No. 57,166, because all of the parties thereto could not have made the claims here involved.

In the case of In re Shimer, supra, Shimer's application had been involved in a previous interference involving five parties. Subsequent to the expiration of the motion period in that interference, but while the interference was pending before the Examiner of Interferences, a motion to amend the interference by adding three new counts thereto was brought by the party Shimer. It was conceded that one of the parties to that interference, MacClatchie, could not have made claims corresponding to the counts proposed to be added, and that if Shimer's motion to add counts had been granted it would have been necessary to declare another interference excluding MacClatchie therefrom. The motion of Shimer was denied because not seasonably filed.

In Shimer's ex parte prosecution of his application the Patent Office rejected certain claims, including those proposed to be added to said interference, upon the ground of estoppel. We affirmed such action and in the opinion stated, 69 F.2d 557:

"It is the view of the tribunals and the solicitor for the Patent Office that the subject-matter of appellant's present application, as stated in his claims 23, 26, 27, and 28, was involved in said interference proceeding, and was common to the disclosures of appellant and other parties to said interference; that it was his duty, if he asserted any such claims, to proceed under Rule 109 of the Patent Office to move to amend his application to include the same therein, and to thus procure their addition as counts to the interference or interferences, as the same might be necessary; and that, not having done so, he should now be estopped to make such claims. The principle underlying the application of the doctrine of estoppel is thought by said tribunals to be that to now allow these claims would be to 'provide grounds for a new interference involving an application with which the applicant has already been involved in interference.'

"In response to this the appellant argues that there was no common subject-matter between his application and that of MacClatchie in said interference, but that there was such common subject-matter between his application and that of Paterson et al., another party thereto, that the addition of said counts would have resulted only in a redeclaration of interference between appellant and the party Paterson et al., which would have resulted in no injury to Paterson et al. This, counsel argues, would bring the case squarely within the doctrine announced by the Court of Appeals in Re Martin, 48 App.D.C. 187. In that case, where estoppel was urged, the court said: 'Assuming that Martin should have moved under rule 109, his failure to do so is not shown to have resulted in injury to anyone; therefore, one of the elements necessary to an estoppel is absent.'

"The doctrine announced in the Martin Case is not in harmony with other decisions of the said Court of Appeals on this subject. These cases hold that if the matter was one which might have been determined in the first interference, the party having a right to have them so determined, who fails to do so, cannot afterward require their consideration. The rule prevails, irrespective of the number of parties in the original interference. In determining whether the same could have been so determined, the interference in fact depends chiefly upon the subject-matter disclosed, and not merely upon the language of the respective claims. The following cases are in point and add no such limitations to the doctrine as are stated in Re Martin, supra; Blackford v. Wilder, 28 App.D.C. 535; New Departure Mfg. Co. v. Robinson, 39 App.D.C. 504; In re Capen, 43 App.D.C. 342; In re Dement, 49 App.D.C. 261, 263 F. 813; Application of Doble, 57 App.D.C. 10, 16

F.2d 350. It will be noted that in some of these cases, following the Martin Case, that case is not cited as authority.

"Soon after this court took jurisdiction of appeals from the Patent Office tribunals, we took the same view of the matter, and have since continued these holdings. In our first examination of the subject (In re Austin, 40 F.2d 756, 759, 17 C.C.P.A. [Patents] 1202) we said, in part:

" '* * * Furthermore, if a party to an interference fails to comply with the rules of the Patent Office relative to the presentation of such claims, it is thereafter estopped from presenting them as a basis for another interference between the same parties.'

"This doctrine of estoppel is further developed in Re Krauch et al., 56 F.2d 290, 19 C.C.P.A. [Patents] 1003; In re Boudin, 58 F.2d 448, 19 C.C.P.A. [Patents] 1187; In re Ellis et al., 47 F.2d 963, 18 C.C.P.A. [Patents] 1060.

"It may be stated that this rule works no hardship to him who is diligent in pursuit of his rights. When an interference is declared, the files of his contestants are open to him. He has full cognizance of their disclosures and claims. So advised, it becomes his duty to put forward every claim he has. Rule 109 affords him this opportunity. If the rule be not enforced or enforceable, then delays and litigation are greatly increased. It is quite obvious that the doctrine of estoppel, as applied in these cases, results in the better conduct of the business of the Patent Office and in the public good.

"We agree with the Board of Appeals that the appellant is estopped as to claims 23, 26, 27, and 28, and that their rejection therefore was proper."

Said case of In re Shimer, supra, is distinguished from the case at bar in that Shimer's original application was there involved, while here a second application of appellee Chase, not in interference No. 57,166, is involved, and Shimer sought to add counts after the expiration of the motion period, while in the case at bar the present interference was voluntarily declared by the Primary Examiner after the expiration of the motion period in interference No. 57,166.

Attention, however, is called to the fact that Shimer sought the interference while the original interference was pending, and that it was held that he was estopped from

making the involved claims solely because of his failure to seek an interference before the expiration of the motion period under rule 109.

It will be observed that in our decision in the case of In re Chase, supra, it is stated that we did not intend to weaken in the least the doctrine of estoppel as announced in the Shimer Case.

The case of In re Brashares, supra, involved an application owned by the assignee of an earlier filed application of one Padmore, which application had been involved in a three-party interference upon a single count. This interference was dissolved without an award of priority, and a patent was issued to one of the parties to the interference, Prescott. Thereafter Brashares copied one claim from the Prescott patent and made certain other claims for the purpose of bringing about an interference proceeding between his application and the Prescott patent. The claims were rejected by the Patent Office tribunals upon the ground of estoppel based upon the failure of Brashares' assignee to bring a motion under rule 109 in the three-party interference between Prescott, Shaw, and Padmore, the application of the last named party being owned by Brashares' assignee.

We affirmed such rejection, although it appears from our opinion that such claims could not have been adjudicated in said interference, and that, if a motion had been made by Brashares' assignee in the interference under rule 109 and allowed, a new interference would have been declared between Brashares and one of the parties to the interference, Prescott. In our opinion we stated, 74 F.2d 752: "Upon what were deemed by this court to be apposite and controlling authorities, as well as upon reason, we have more than once affirmed proceedings of the Patent Office under rule 109, supra, thus indicating our belief in the validity of the rule itself, and of the reasonableness of its application under the facts which the cases then before us presented."

In said decision we also discussed the case of In re Shimer, supra, and with respect to it said:

"In the case of In re Shimer, 69 F.2d 556, 21 C.C.P.A. (Patents) 979, the rule was applied under a somewhat different state of facts.

"Of our findings there, the brief of appellant says:

"'* * * [Those findings] have perhaps gone as far as this or any Court has ever gone in approving the Patent Office in its applications of this doctrine of estoppel.'

"In that case the application involved was the same application which had been in an interference in which the party, Shimer, had seen applications of his opponents which disclosed, but, apparently did not claim, the subject-matter of certain of the claims he was seeking to make in the ex parte proceeding. The tribunals of the Patent Office held that to allow such claims to be made would be to 'provide grounds for a new interference involving an application with which the applicant has already been involved in interference,' and this court affirmed that view.

"A difference between the Shimer Case, supra, and the case at bar is that the Brashares' application, the only application belonging to the General Company, in which the here involved claims could have been made, was never in interference with the Prescott application.

"Careful consideration has been given to contentions made on behalf of appellant, and the authorities cited in support of same, but we are unable to discern any distinction in principle between the situation existing here and that which existed in the several cases above noted in which the application of the doctrine of estoppel by the tribunals of the Patent Office was sustained, nor do we think the facts of this case are analogous to those which existed in the case of In re Chase, 71 F.2d 178, 21 C.C.P.A. (Patents) 1183."

From the foregoing it clearly appears that the only pertinent fact present in the case of In re Chase, supra, which was not present in one or more of the cited cases, was the fact that the Primary Examiner voluntarily, in effect, declared the interference here involved, while in the cases cited either the party estopped sought an interference after the expiration of the motion period, or there had been an entire absence of action by any one with respect to the interference upon the claims involved.

■ This brings us to a consideration of the question of whether a voluntary declaration of an interference by the Commissioner of Patents, acting through his subordinates, prevents the application of the rule of estoppel announced in the Austin, Shimer, and Brashares Cases, supra.

It is clear that interference No. 60,503 was declared long after the motion period in interference No. 57,166 had expired, and it is also clear that if, immediately prior to the time interference No. 60,503 was declared, Chase had moved in interference No. 57,166 to bring in his application here involved, without any showing of excuse for delay in making the motion, such motion would have been denied; or, if granted, appellant could have successfully maintained a motion to dissolve the interference upon the ground that the counts were unpatentable to Chase by reason of estoppel.

Rule 109 of the Rules of the United States Patent Office reads as follows:

"109. An applicant involved in an interference may, within a time fixed by the examiner of interferences not less than thirty days after the preliminary statements (referred to in rule 110) of the parties have been received and approved, or if a motion to dissolve the interference has been brought by another party, within thirty days from the filing thereof, on motion duly made as provided by rule 153, file an amendment to his application containing any claims which in his opinion should be made the basis of interference between himself and any of the other parties.

*　　*　　*　　*　　*　　*

"Any party to an interference may bring a motion to put in interference any claims already in his application or patent which should be made the basis of interference between himself and any of the other parties. Any party to an interference may bring a motion to add or substitute any other application owned by him, as to the existing issue, or to include an application or a patent owned by him, as to claims which should be made the basis of interference between himself and any of the other parties. Such motions are subject to the same conditions and the procedure in connection therewith is the same, so far as applicable, as hereinabove set forth for motions to amend."

We are frank to say that in our decision in the Chase Case, supra, we were of the opinion that the voluntary declaration of an interference by the Primary Examiner was equivalent to the examiner's having allowed a motion by Chase in interference No. 57,166 under rule 109 to bring in his second application, upon a showing

of cause for failure to file such motion during the motion period.

We are now of the opinion that we were in error in this view; that interference No. 60,503 was inadvertently or improvidently declared by the Primary Examiner; and that upon the record before us appellee was estopped under rule 109 from making the claims constituting the counts here involved, and could only be relieved from such estoppel by a showing upon the record in interference No. 57,166 of good cause for not having complied with rule 109. There is no such showing, and there is no indication in the record that, if the Primary Examiner had not voluntarily declared interference No. 60,503, appellee Chase would ever have sought such an interference.

Appellee contends that the right to extend time for motions under rule 109 is discretionary with the Patent Office, and that the declaration by the Primary Examiner of the present interference was a tacit waiver by the Patent Office of any objection as to the timeliness of the setting up of said interference.

It seems to be the practice of the Patent Office, continued for many years, to admit on motion additional claims and applications to an interference previously declared, after the expiration of the motion period under rule 109, upon a showing of cause for delay in making the motion. This practice, however, is not here involved, for the question before us is, may the Primary Examiner properly declare an interference at a time when the claims are not allowable in the application of one of the parties because of his failure to bring them forward in a prior interference to which he was a party.

It is not here claimed that rule 109 is invalid or unreasonable. In the case of United States ex rel. Horace Koechlin et al. v. Marble, 1882 C.D. 442, the Supreme Court of the District of Columbia, in discussing the rules of the Patent Office, said: " * * * Congress, in creating the Patent Office, has by express legislation given that Office the power to enact rules for its conduct. Those rules, if they are within the powers of the Office, are just as authoritative as the laws of Congress itself, if within the limitation of its powers. * * * "

The rules, in so far as they affect the rights of applicants, are necessarily binding upon the officials of the Patent Office as well as the applicants.

To hold that the Primary Examiner may ignore rule 109 when a party, by failure to comply with it in an interference proceeding, has lost any rights he may have had to claims in his application, and declare another interference restoring those rights, without any showing of excuse by such party in the original interference for not complying with the rule, thus relieving himself of the estoppel against him, would create an intolerable situation of confusion in the prosecution of applications in the Patent Office. No party to an interference could know even after the interference had been terminated what issues he might be called upon to meet. By the observance of rule 109, where the motion period has expired in an interference all parties thereto are reasonably certain that there will be no other or further contest between the parties or any of them with respect to the applications in interference, or other applications held by one of them involving the same invention disclosed in one of the applications in interference.

We conclude that, when interference No. 60,503 was declared, the claims corresponding to the counts here involved were, upon the record before us, unpatentable to appellee by reason of estoppel occasioned by his failure to comply with rule 109 in interference No. 57,166, the record not disclosing any excuse for such failure. This being true, the motion to dissolve the interference should have been granted.

It appears from the decision of the Examiner of Interferences that a like motion to dissolve was made when interference No. 60,503 was reformed after our decision in the case of In re Chase, supra.

It is true that the doctrine of estoppel is not favored, because estoppels preclude a party from showing the truth; but it must be remembered that, when interference No. 57,166 was declared, appellee Chase had access to appellant's application here involved, while appellant had no knowledge of appellee's application involved in the interference at bar. After the motion period under rule 109 in interference No. 57,166 had expired, appellant had the right to assume that neither appellee nor his assignee had any other pending applications which would interfere with appellant's application in said interference; and if, after such motion period expired, appellee sought to excuse himself for not

complying with rule 109, appellant would have a right inter partes to resist any motion by appellee to add any other application to the interference.

These considerations lead to the conclusion that rule 109 is a reasonable one, but inasmuch as its reasonableness has not been questioned we will not pursue this subject further.

For the reasons hereinbefore stated, we feel compelled to come to the conclusion that we were in error in the case of In re Chase, supra, in considering that the voluntary declaration of interference No. 60,503 by the Primary Examiner, followed by the declaration of interference No. 69,-901, was a fact which prevented the operation of rule 109 as an estoppel against appellee herein.

There is some contention by appellee that the Chase application here involved is for a different invention than that disclosed in the first Chase application involved in interference No. 57,166. Appellant contends that the counts before us are directed to the same invention as that covered by the counts of interference No. 57,166, differing therefrom only in scope.

In the decision of the Board of Appeals in interference No. 60,503, it is stated: "The counts of the present issue are somewhat more specific than the count of the issue of the earlier interference but they relate to the same general subject matter. It is admitted that they do not read on the earlier Chase application."

The Avery application here involved is the same application that was involved in interference No. 57,166. Apparently no division was required upon the theory that the application involved separate and distinct inventions, and we do not think that any differences between the counts of the interference before us and the count in interference No. 57,166 should prevent the application of rule 109, assuming without deciding that if the invention involved in interference No. 57,166 was separate and distinct from that involved in the interference at bar, compliance with rule 109 in bringing the invention here involved into interference 57,166 would not have been obligatory.

We are not unmindful that the United States Court of Appeals for the District of Columbia has, in the case of International Cellucotton Products Co. v. Coe, 66 App. D.C. 248, 85 F.2d 869, expressly approved our decision in the case of In re Chase, supra, and has held that, where an interference has been declared by the Patent Office, estoppel will not lie against a party to that interference with respect to counts or claims that could not have been adjudicated in that interference. In other words, in the view of that court, estoppel in such cases can be applied only under the doctrine of res adjudicata.

We of course entertain the highest regard for the views of that court, and disagree with it most reluctantly. The conflict of decisions may create an embarrassing situation for the tribunals of the Patent Office, but we are convinced of the soundness of our decision in the case of In re Shimer, supra, expressly affirmed in the case of In re Chase, supra, and again in the case of In re Brashares, supra, holding that estoppel will ordinarily lie for failure to comply with rule 109, even though a second interference be necessary; or, in other words, that estoppel is not restricted to the application of the doctrine of res adjudicata. We would observe that if, in the opinion of the Commissioner of Patents, the interests of the public and orderly procedure in the Patent Office would be better served by adherence to the views expressed by the Court of Appeals of the District of Columbia in the case of International Cellucotton Products Co. v. Coe, supra, it is of course within the power of the commissioner so to amend rule 109 as to avoid any conflict of decisions.

It is also a matter of the utmost regret that we feel compelled to overrule our decision in the case of In re Chase, supra. The Patent Office tribunals correctly followed our decision in the case last cited, and we reverse the Board of Appeals only because we feel called upon to reverse, in effect, our own decision in the case of In re Chase, supra. However, the judges of courts are human and not infallible, and when they err, as they sometimes do, they should not hesitate to correct their errors.

To recapitulate, while the issues herein could not have been decided in interference No. 57,166, because all of the parties thereto could not have made the claims constituting the counts, the same situation existed in the case of In re Shimer, supra; in that case the original interference had not terminated at the time that Shimer sought to add other

counts, and in the case at bar, appellee claims that interference No. 57,166 had not terminated at the time the interference before us was declared. The one material point of difference in the two cases is that in the case at bar the interference was voluntarily declared by the Primary Examiner, while in the Shimer Case the Primary Examiner had refused to declare a second interference. This one point of difference we have fully discussed herein, and we conclude that this point does not so distinguish the two cases as to relieve appellee from estoppel by reason of failure to proceed in interference No. 57,166 within the motion period under rule 109.

It follows from the foregoing that the decision of the Board of Appeals must be reversed.

In the briefs of both parties there is considerable discussion of the question of whether, if appellant be awarded priority of invention, he will be entitled to a patent embracing the counts here involved. We have given this question no consideration, for that is a matter which may not be determined in this appeal.

An addition to the record in this case was made by writ of certiorari, issued upon application of appellee. The writ was granted, and inasmuch as it appears that such addition was proper and material to the issues herein, the costs of such addition will be assessed against the appellant.

The decision of the Board of Appeals is reversed.

Reversed.

BLAND, Associate Judge (dissenting).

It is not necessary for me to recite the facts involved in this interference proceeding since they are stated in the majority opinion and are also stated in the original ex parte Chase Case.

Appellant Avery's contentions here are that the present record makes it clear that the former Chase Case was erroneously decided and that controlling facts which appear in this record were not disclosed in the former record. While it may be said that the instant record makes clear certain facts which were not so clear in the former record, it is not thought that the differences between the records affords any justification for arriving at a conclusion different from that which the court arrived at in the ex parte case, unless we

are of the opinion that the court erroneously failed to apply the doctrine of estoppel in that case.

Appellant has pointed out in his very elaborate brief what he regards to be the important features of the original Chase Case which he contends are out of harmony with the decisions of this and other courts and frankly urges that this court change its former conclusion. He points out that, as evidenced by various publications, including articles appearing in the Journal of the Patent Office Society, which cites the report of the Patent Office Advisory Committee made to the Secretary of Commerce (448 O.G. 267), the decisions of this court and of the Court of Appeals of the District of Columbia (now the United States Court of Appeals for the District of Columbia), on the subject of estoppel under Rule 109, have led to great uncertainty and confusion in interference practice.

In view of the considerations to which appellant has alluded, I agree that it is important in the decision of this case to review the whole question of the so-called doctrine of estoppel which has developed in connection with Rule 109 of the Patent Office. This will necessarily require a consideration of the history of the development of the doctrine.

Estoppels are not favored by the courts because they prevent the proving of the truth and should be applied only in very clear cases. The principle applied by the Patent Office to the Chase application during its ex parte consideration is the outgrowth of a doctrine which was, as far as I have been able to discover, first invoked a third of a century ago by the Court of Appeals of the District of Columbia in Blackford v. Wilder, 28 App.D.C. 535. The court held that the party Wilder was not entitled to the allowance of claims in an application because of the fact that he was estopped from claiming ex parte that which he had lost in a prior interference, which interference had been finally adjudicated by the court. It was there stated that it would be presumed that all matters had been adjudicated in the original holding which could have there been adjudicated. The estoppel was there clearly based upon the doctrine of res judicata. This doctrine is a very old one and one which had been definitely and clearly announced by the Supreme Court of the United States in Nesbit v. Independent

District, 144 U.S. 610, 12 S.Ct. 746, 36 L.Ed. 562. (The last-cited case is the basis of the decision in Blackford v. Wilder, supra.)

Without going into too much detail in the way of citation and discussion, it is fair to state that a consideration of the cases subsequently decided by the Court of Appeals of the District of Columbia discloses that the doctrine of res judicata was not only extended but a kind of equitable doctrine was also applied. The latter was to the effect that where one avoided a test of priority at a time when he had the right to speak and claim priority, it would be inequitable to allow him to claim in an ex parte proceeding that which he had refused to claim and assert priority to when he had the opportunity to do so. But, in every instance, in the early development of the doctrine there had to be certain elements present. The estoppel in pais was declared to exist where there was a statement, admission or act by one of the parties which was inconsistent with his later claim of priority, and where the statement, admission or act made by him was relied upon by his opponent to the latter's injury. If any one of these elements did not exist, there was no estoppel.

Now, it must be conceded that this court and the Court of Appeals of the District of Columbia have gone further in applying these doctrines to questions comparable to the one at bar than have the courts in any other jurisdiction. It has been held in substance that if one's application has been in an interference with another and he fails to bring forward an assertion of priority of claims therein, he is estopped in his ex parte prosecution from claiming that invention, even though all the elements of the true doctrine of equitable estoppel or estoppel by reason of res judicata are not present. Moreover, in Re Brashares, 74 F.2d 751, 22 C.C.P.A., Patents, 873, it was held that a party to an interference was not only required to bring forward other claims of the application actually in interference, but any other claims in any other application which he might own, and we may say further that this court has gone so far as to hold that he will be estopped unless he brings forward the claims of an application not in the interference even though all the parties to that interference cannot make the counts and even though it be necessary to set aside an issue for another interference between the parties who can make the counts. This misnamed estoppel is based upon the premise that the party did not comply with Rule 109. This is not only the holding of some of the decisions of this court but of some of the decisions of the Court of Appeals of the District of Columbia, our predecessor in this jurisdiction. The doctrines announced in these cases obviously are not based either upon res judicata or estoppel by reason of inequitable conduct. Res judicata has been applied where there was no identity either of the parties or issues and also where there was no finality of judgment, as well as in cases where it was impossible to have adjudicated the particular issue involved. The so-called equitable principle has also been applied in cases where there were no such facts as to make the well-known equitable doctrine applicable. Outside of the holding in these decisions, there is no warrant in law for denying the first inventor a patent because he has not taken advantage of an opportunity offered by a Patent Office rule.

At the time Blackford v. Wilder, supra, was decided, there was no rule in the Patent Office which entitled an applicant to bring forward all his claims in an application and submit them in a priority contest. Recognizing the force and importance of that decision, based squarely upon the settled doctrine of res judicata, the Patent Office adopted a rule—109—which said in substance that an applicant in an interference proceeding may by motion bring forward claims. This, of course, meant claims in the application involved. Later (July, 1927), the rule was amended, stating that the party may substitute any other application owned by him. It was then only a short step until the Patent Office began holding that the applicant was estopped from obtaining his claims if he did not bring them forward under the permission granted by the rule, even though the case lacked the elements necessary for either the doctrine of estoppel based upon res judicata or inequitable conduct. This was more than a distinct extension of the doctrine. It was, as I am being forced to conclude, the creation of a bar to the obtaining of a patent, which was neither warranted under the statute nor sanctioned by the settled principles of law. From this quickly developed practice there was started a line of holdings which are now being followed and extended to such a degree as to call for a reinvestiga-

tion of the whole question by everyone interested in patent jurisprudence.

For reasons which will presently appear, rule 116 of the Patent Office was amended in 1934.

In White et al. v. Ovaitt, 1923 C.D. 18, the Commissioner of Patents had held that the senior party in an interference, which had been dissolved without an award of priority, was barred from thereafter asserting broader claims by reason of his failure to comply with rule 109. In re Capen, 43 App.D.C. 342, was relied upon for supporting authority. This court in Re Alexanderson, 69 F.2d 541, 21 C.C.P.A., Patents, 983, in a case where the interference had been dissolved before there was a final award of priority, had held that the senior party was estopped from claiming that which he could have sought to obtain in the interference in which he was engaged.

In October 1934, in a report of the Patent Advisory Committee to the Secretary of Commerce, supra, attention was called to this situation in the following language:

"The situation thus developed in the practice may lead into a dilemma.

"(1) To deny a party participation in an interference when he fails or refuses to assert or reveal his claim within the times provided, and where his activities constitute a bar to another, may result in an award of priority in favor of an issuance of a patent to one who is not the first inventor and who is not entitled to the patent.

"(2) To admit to participation in an interference a party who is barred (by his own laches or failure to comply with orderly procedure) from receiving the patent is to give a pure right of opposition, i. e., a right of opposition not coupled with a claim, and that is not sanctioned by law.

"While it would appear that the proper administration of the law requires strict compliance of a party with the regulations requiring him to assert or reveal his claim within the time prescribed or permitted by the practice—otherwise the practice degenerates into chaos—nevertheless it would appear that invariable forfeiture of rights, regardless of circumstances, is an exceedingly severe application of the doctrine not consistent with the doctrines of equity upon which it rests. It is believed that a treatment of each case upon its own facts by or under the authority of the Commissioner of Patents will evolve a proper procedure mitigating the severity of the practice as heretofore adopted and avoiding the dilemma above pointed out, which procedure may, when evolved, be cast into the form of a rule.

"Your committee, after long and intensive consideration of the matter, has therefore arrived at the following conclusions:—

"(1) That in general, where a party is tardy in asserting an interfering claim to subject-matter or to dates, the particular facts should be considered in determining whether and to what extent the party is under default so that the doctrine of estoppel should be applied. However, having regard to the numerous factual variations which may be encountered, it is questionable whether a rule of universal application can be safely laid down. Therefore, the members of the committee, although being in general accord as to the principles which should govern, are making no recommendation as to this branch of the problem, in the absence of a solution that they feel to be entirely satisfactory.

"(2) That in the particular case where an interference is terminated by dissolution without an award of priority a rule limiting the application of the doctrine of estoppel may properly be made.

"Accordingly, your committee has already recommended and received your approval of a revision of rule 116, and rule 116 as so revised went into effect August 21 of this year [1934]. With regard to estoppels arising out of cases in other categories, your committee is not prepared to make final recommendations but still has the matter under consideration."

The new matter added to rule 116 reads as follows:

"116. * * *

"The termination of the interference by dissolution under rule 122 without an award of priority shall not disturb this presumption, and a party enjoying the status of a senior party with respect to any subject-matter of his application shall not be deprived of any claim to such subject-matter solely on the ground that such claim was not added to the interference by amendment under rule 109."

Now, at last we have a situation wherein the Patent Office by rule decides under what circumstances estoppel will be applied. It makes no difference what the courts think about the inequitable conduct of the party or whether or not the necessary elements exist which make the doctrine apply. The Patent Office in order to get away from a fast-growing intolerable situation has been persuaded to assert by rule that under at least one statement of facts there will be no estoppel applied. It is now suggested by the majority that rule 109 might be amended so as to make the decisions of the courts harmonize. I take this to mean that if the Patent Office wants to further get away from certain undesired results from the application of the doctrine of estoppel by virtue of failure to act under rule 109, the said rule 109 may be so changed as to modify the requirement with reference to copying claims. This subject matter prompts the observation that if the action of the Patent Office in the adoption of rule 116 constitutes a valid and effective rule, the adoption of further rules along this line would accomplish the same purpose without destroying the desired effectiveness of rule 109 to accomplish the purposes for which it was originally intended.

It is the view of the majority that in the instant case Chase, having failed to bring forward certain claims of an application not in the original seven-party interference, and irrespective of the showing that he clearly was the first inventor, and irrespective of the fact that Avery admits he is not the first inventor and in any event could not have a valid patent for the subject matter of the interference counts here involved, Chase should be estopped, not because of the doctrine of res judicata, because it is obvious that it does not apply, and not because of the application of the strict doctrine of equitable estoppel, because clearly Avery has shown no damage, admits that he cannot have the patent and that Chase is the first inventor, but for the reason that Chase has failed to comply with rule 109. Just here, let it be observed that the Patent Office has made no rule which states that in the ex parte prosecution of a patent application a party will be denied claims upon the ground of estoppel if he did not take advantage of the opportunity extended by rule 109 and bring these claims forward in a prior interference. If the Patent Office has the lawful right to determine one's rights under the doctrine of estoppel by the adoption of rule 116, it also has the perfect right to adopt and promulgate a rule which would inform inventors that if they did not bring their claims forward as they are permitted to by rule 109, they will be estopped when claiming the invention in an ex parte proceeding.

In Severson v. Olson, 64 F.2d 694, 20 C.C.P.A., Patents, 946, and elsewhere, this court said that it would not extend the doctrine of equitable estoppel or the doctrine akin to equitable estoppel which has many times been announced (first in Mason v. Hepburn, 13 App.D.C. 86), and I think the courts, and especially this court, have very carefully guarded against its extension. The application of the doctrine denies the right of the first inventor to claim that which he has invented. It is based squarely upon equitable considerations. It seems to me that there are more persuasive reasons for calling a halt to the unwarranted and unusual extension of the so-called doctrine of estoppel when applied by reason of Rule 109 than there was for refusing to extend the Mason v. Hepburn doctrine. It seems to me that the particular facts at bar suggest the necessity of halting the unwarranted extension of the doctrine at this point.

The facts in the case at bar are unlike the facts in any case in the books anywhere. We pointed this fact out in the ex parte decision. Some of the parties in the seven-party interference could not make the counts. The particular issue between the appellant and the appellee at bar could not have been adjudicated in that interference. Another interference would have had to be declared. Unless the doctrine of estoppel based upon res judicata is greatly extended (and I fear that it has been) it could have no application to this kind of case. In the ex parte Chase Case, however, we alluded to this fact together with the additional fact that the application involved in the seven-party interference was not the application which the appellant is charged with not bringing forward. Moreover, we there called attention to the fact that while the seven-party interference was still going on and while it was still possible for Chase, upon a proper showing, to have the second application moved into the interference, the Primary

Examiner, while exercising his discretionary power, and for reasons which evidently appeared satisfactory to him, set up the second interference and caused the claims to be copied without requiring any showing or motion. Appellee was so clearly the first inventor that no contest of priority was had at that time or in the same redeclared interference which is now before us. It was the Examiner of Interferences who applied the doctrine of estoppel.

After careful consideration, this court, in Re Brashares, supra, where estoppel was applied, pointed out that the facts in that case were not analogous to those which existed in the ex parte Chase Case.

So, we have a case here where the combined facts are so very different from those in any other case in the books that if it is the desire not to extend the doctrine, every other case can be distinguished. The language of Mr. Justice Cardozo, although addressed to a different question, in Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796, would seem to aptly apply— "The tokens of intention set down in this opinion have a force in combination that is denied to any one of them alone." [Page 360.] Let it be remembered that while the motion period had passed, it was still within the discretion of the Patent Office to open up the case, upon a proper showing, and permit a trial of priority on the particular issue between the appellant and the appellee.

The majority opinion states that the Primary Examiner had no right to declare the second interference because when he did he knew that Chase would not be allowed the claims by reason of the fact that he was estopped. Estopped upon what theory? Not because he was trying to avoid a contest of priority. The inventions were so dissimilar in the two applications that the Primary Examiner believed that a separate interference was necessary and declared it. Chase, admittedly the first inventor, came forward in response to the Patent Office request and apparently satisfied everyone concerned that he was the first inventor in fact. What is there about his conduct that is unfair, that is inequitable? Has he attempted to evade a priority contest in claims that he would have lost? Not at all.

Appellant takes the position in this case that a holding with him that Chase is estopped is not an extension of the doctrine; or at least he argues, in effect, that if it be an extension it is such an extension as is the natural outgrowth of the doctrine and the logical development of it. Right there lies the difficulty with the whole situation. By somewhat plausible argument it is easy to continue to stretch and extend the doctrine until it ceases to remotely resemble the one originally adopted. This fact, I think, I have clearly hereinbefore shown. If this court is of the opinion that it should not extend the doctrine, being an unpopular one, although admittedly a meritorious one in proper cases, it should refuse to extend it to facts not found in the prior decided cases and especially it should do so when those facts are such as to make the application of the doctrine when resting upon res adjudicata or strictly equitable principles inappropriate. The majority states, and they find precedent therefor in our decisions, that the so-called estoppel applied to Chase has its origin in his failure to comply with Rule 109. To my way of thinking, Chase has violated no Patent Office rule. He could have brought forward, under the permissive rule of the Patent Office, these claims at a place and time when he could not have had the issue adjudicated. It might have resulted in the declaration of a new interference. This is exactly the thing that was done. Even if it be conceded that he has violated Rule 109 there is no mandate in it requiring a denial of a patent.

Let us for a moment look at this court's decision in Re Long, 83 F.2d 458, 23 C.C.P.A., Patents, 1078. Long, during the pendency of his application, was claiming the invention of the interference, and he had claims standing allowed for this invention. The examiner denied the claims in Long's ex parte prosecution on the ground of estoppel for the reason that he had not presented for priority contest claims broader than those he had lost in the interference. The estoppel was stated to rest upon the proposition that the losing party in an interference proceeding ordinarily cannot be awarded claims broader than those which were awarded to the successful party. The application involved in the interference was not involved in the original interference. We held that the invention involved in the original three-party interference was an improvement on the broad invention disclosed and claim-

ed in the application in the interference in which he was estopped. It was apparent that the claims were not patentable to the winner Evans or the loser Day. We took the position that the estoppel, if there was one, did not operate in favor of the party claiming it and reversed the board's decision. What about the instant case? When Avery conceded that he could not have a valid patent and is therefore not damaged, how can he invoke an equitable estoppel against Chase? In the Long Case, supra, we said [page 462]:

"In this court the Solicitor for the Patent Office contends that, regardless of whether or not the basis for an equitable estoppel exists, it is the settled law that, unless appellant, under rule 109, moved to add to the interference claims to the broad subject matter now claimed, the same being broader than the issue of the interference, he is not now entitled to their allowance in the instant application, and relies largely upon In re Rhodes, 80 F.2d 525, 23 C.C.P.A. (Patents) [816]. The Solicitor points out certain distinctions which exist between the instant case and the Rhodes Case, but contends that the distinctions are not material and that the holding of the Board that appellant was not entitled to the claims for the reasons by it stated is abundantly supported by the authorities.

"We know of no case on all fours with the case at bar either in the facts or the principles involved. It would be needless to cite authority for the proposition that in the Patent Office there has been a gradual extension of the so-called doctrine of estoppel. In some of its phases it has been approved by the courts, and in others the application of the doctrine has been rejected. It is well-settled, however, that, if a party to an interference fails to submit subject-matter claimed in the application involved or in other applications belonging to him for a contest of priority where such subject-matter is claimed by his adversary or adversaries, he is afterwards barred from obtaining claims not so submitted or claims broader than the issue of the interference. It furthermore has been held that it is not only his duty to bring forward such subject-matter when the matter is claimed by his adversary, but that it is also his duty to do so when such subject-matter is clearly disclosed by his adversary and not claimed. The latter was our hold-ing, in approving the action of the Patent Office, in Re Rhodes, supra.

"We know of no case, however, where a party losing narrow claims in an interference has been denied broad claims because he failed to present the same in an interference where the subject-matter was not patentable to any one of the other parties, and where they, in claiming an improvement over the broad invention, either disclaimed the broad invention or by their conduct clearly conceded that in any event they could not be regarded as its first inventor."

In about a dozen cases this court has had occasion to review the decision of the Board of Appeals with reference to its application or failure to apply the doctrine of estoppel arising out of an alleged lack of compliance with the provisions of rule 109. We have reversed the board but twice where it applied the doctrine—In re Long, supra, and In re Chase, supra. If the Chase Case was decided wrong, the Long Case must not be pointed to as the law. The holdings of this court will, therefore, all be one way as far as results are concerned. Since the doctrine in the instant case has been by the majority extended to facts wholly different from those in any other case, it is not seen how it can be logically contended that the doctrine is not being extended to such a degree that the situation is, to say the least, becoming somewhat alarming. It seems to me that it is obvious that our decisions on this question are not in harmony with each other and, with all due deference to the views of the majority, it would seem to be the part of wisdom to overrule other decisions of this court rather than the only ones which have promised any relief from the growing intolerable conditions.

I deem it proper to make reference to another important and interesting matter. The United States Court of Appeals for the District of Columbia, our predecessor in our present patent jurisdiction, now exercises appellate jurisdiction under section 4915 of the Revised Statutes, 35 U.S.C.A. § 63. It is called upon to consider the same subject matter as we are herewith concerned. In International Cellucotton Products Co. v. Coe, 66 App.D.C. 248, 85 F.2d 869, the court seems to have gone back squarely to the principle of res judicata in making application of the doctrine of estoppel for failure to present claims in

220

an interference proceeding. Whether the court in the later case of E. I. Du Pont De Nemours & Co. v. Coe, 67 App.D.C. 42, 89 F.2d 679, which did not cite the International Cellucotton Products Co. Case, supra, was a reconsideration of the whole matter, I have no way of knowing. In the Du Pont Case, however, there was nothing to indicate that the whole matter was given renewed consideration or that the holding in the International Cellucotton Products Co. Case was considered or disapproved.

For reasons stated in the ex parte Chase Case, supra, which will be summarized more in detail here, I am convinced that this court is wholly unjustified in reversing the decision of the Board of Appeals which in this proceeding followed our holding in the ex parte Chase Case and declined to apply the doctrine of estoppel. Those reasons may be summarized as follows:

First. Chase is unquestionably the first inventor.

Second. It is conceded that the involved counts would not be valid in a patent issued to Avery. He has, therefore, not been harmed.

Third. The subject matter of this interference is a different invention from that disclosed in Chase's application in the first interference and the issue could not have been adjudicated in that interference.

Fourth. A second interference was properly declared by the Primary Examiner. Both parties were offered their day in court and Chase, when called upon, entered the contest and easily showed priority. He therefore is not in the inequitable position of attempting to evade a priority contest and later attempting to claim that which he otherwise would have lost.

Fifth. There having been no adjudication of the issue either actually or presumptively in the first interference and none of the elements of equitable estoppel being present, there is no warrant in law for interposing estoppel as a bar against appellee's obtaining a patent.

I cannot agree with the majority that there is any basis for estoppel after the Primary Examiner in the exercise of his discretion had set up the second interference.

GARRETT, Presiding Judge, concurs in the foregoing dissenting opinion.